[No. B034547. Second Dist., Div. Four. Feb. 22, 1989.]

ROBERT DAVIS et al., Plaintiffs and Appellants, v.
RICHARD GOMEZ et al., Defendants and Respondents.

## COUNSEL

Jacques Beugelmans, Paul Kallman and Robert Havens for Plaintiffs and Appellants.

Peterson, Ross, Schloerb & Seidel, Ronald K. Alberts and Douglas H. Deems for Defendants and Respondents.

## OPINION

**GOERTZEN, J.**—This is an appeal from the order entered granting a summary judgment in favor of the defendant in a wrongful death action pursuant to Code of Civil Procedure section 437c.

The appellants contend that the trial court erred in determining that the landlord had no duty to take measures to monitor or control the alleged psychotic behavior of another tenant who lived in the same apartment building as their son and the failure to take such action resulted in their son's death.

### FACTS

Appellants Robert and Mary Davis, the parents and heirs at law of the deceased Tyrone Davis, filed actions for wrongful death against Charlene

Townsend, who shot and killed Tyrone Davis as he walked past her apartment door on June 29, 1986. Ms. Townsend is not a party to this appeal.

Appellants also named as defendants in the actions the partnership which owned the apartment building where the shooting took place, respondents Richard Gomez, Rudy Gomez and Maria Gomez.

Carl McGill was the manager of the respondents' apartment building and a City of Los Angeles police officer. He claimed that in early April 1986 Ms. Townsend's mental condition began to "deteriorate." By May 1986, it was apparent that Ms. Townsend was "losing her mind."

Ms. Townsend never threatened him or anyone in Mr. McGill's presence. But Mr. McGill heard Ms. Townsend "grumbling off as if she was talking to somebody" in a loud voice while she was alone in her apartment.

Other tenants complained to Mr. McGill that they felt threatened by her actions. The other tenants began avoiding the area in front of her apartment. Gerald Lewis told Mr. McGill that he had seen a gun in Ms. Townsend's living room. Bernadette Gillette came to him several times and told him Ms. Townsend was talking to herself out loud and was in the front window of her apartment moving her hands as if she was casting spells on those who walked by.

Jim Ross, another policeman who resided in the building, told Mr. McGill about the spell-casting behavior and said he was "worried about everybody's safety . . . because of her behavior." He also had seen the gun in her living room.

Mr. McGill stated that about a month before the shooting he telephoned Richard Gomez and told him that Ms. Townsend was "acting very peculiar and a lot of people are scared to go past her window to get downstairs." Mr. McGill also repeated the reports of the presence of the gun. Mr. Gomez replied that he "would check into it."

Richard Gomez did not take any action on the complaint before Tyrone was shot. There was also other evidence that the Gomez defendants did not investigate Ms. Townsend's background or references before renting the apartment to her and after the above complaints were reported to them by Mr. McGill.

The trial court's memorandum of ruling on the motion for summary judgment stated in pertinent part: "It is well-established that the landlord of residential property owes certain duties not only to tenants, but also to

third-party guests and visitors. (See *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504 [118 Cal.Rptr. 741, 81 A.L.R.3d 628].) Under certain circumstances, that duty may be absolute, imposing 'strict liability' on the landlord for dangerous conditions of the rented premises. (See *Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601].)

"Still, it is not enough to surmise that the landlord should have done 'something' in response to a given situation. Instead, it is essential to define that 'something' in fairly precise terms. Otherwise, the law would be requiring adherence to an unknown standard of conduct, recognized only with 20-20 hindsight.

"Preliminarily, this Court does not believe that any landlord should be expected to check the references or background of a prospective tenant for reasons other than to protect the landlord's *own* interests. Nor was it within the reasonable province of either Mr. McGill or his employers to diagnose Ms. Townsend as 'psychotic.' What, then, should these defendants have done, and in what way was their failure to so act a proximate cause of plaintiff's loss? [Italics in original.]

"Plaintiffs argue that the Gomez defendants had both the power and the opportunity to evict Ms. Townsend on the basis of her reported behavior. (See *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d at pp. 512-513.) Certainly, a landlord owes a duty to preserve the quiet enjoyment of all tenants. In extreme cases, eviction of a troublesome tenant may provide the only practical means to abate a nuisance which affects other tenants. Notably, those other tenants would not share the power of eviction, and would otherwise be limited to remedies of a less certain nature.

"Still, the evicted tenant also has rights, and a landlord had better be extremely careful and sure of his/her grounds before instituting eviction proceedings. Under circumstances of the present variety, the landlord is often caught in the middle of competing tenant interests, and stands at risk no matter what course of action is decided upon. It is usually a classic 'no win' situation. Yet, if it were reasonably foreseeable that an innocent tenant might be killed, the possibility of legal action by the evicted tenant obviously becomes of subordinate concern.

"Although the reported conduct of Ms. Townsend was perhaps disquieting, and while 'casting spells' may be considered aggressive behavior of sorts, none of it involved any physical violence or real threat to cause bodily harm (depending, perhaps, on whether one believes in the occult virulence of 'spells'). Nor did her open possession of a firearm necessarily invite

speculation that she was actually disposed to use it indiscriminately against another tenant.

"Consequently, while her conduct might have represented a common nuisance, it does not follow that anyone should have foreseen the escalation of that behavior into a fatal shooting. The reality is that persons exhibiting similarly 'bizarre' behavior are to be seen on the streets of every metropolitan community. Fortunately, few are ever actually dangerous.

"Although the issue of foreseeability is usually for the trier-of-fact to determine, the facts presented here simply do not support a finding that the shooting of plaintiff's decedent was reasonably foreseeable from the unusual and bothersome, but otherwise innocuous behavior reported.

"Certainly, the failure of these defendants to eliminate a mere nuisance is not the same as their failing to prevent a serious criminal act. This case is therefore distinguishable from the situation where a landlord neglects to provide adequate lighting or security in a *known* high-crime area. The mere failure to evict a 'nuisance' tenant, while representing a breach of duty to other tenants, would not be the proximate cause of a fatal shooting. A separate duty, touching upon different interests, would have to appear. [Italics in original.]

"Plaintiff Mary Sue Davis further suggests that the Gomez defendants should have requested a 72-hour psychiatric hold and observation. (See Welf. & Inst. Code, § 5000, et seq.) Aside from the obvious legal repercussions of inducing the commencement of civil commitment proceedings (Welf. & Inst. Code, § 5150), the Court can discern no reason to impose this as the special duty of a landlord. Tenants are not so helpless that they must rely upon their landlord to pursue every alternative which is equally available (and equally risky) to all.

"Plaintiffs' most persuasive argument is that the Gomez defendants should at least have investigated further to determine whether Ms. Townsend posed a serious threat to the other tenants. They were certainly in a position to approach her and discuss the problem. Ostensibly, it might *then* have become reasonably foreseeable that Ms. Townsend was inclined toward actual violence. Yet, to assume that this failure to investigate was a proximate cause of the shooting represents a quantum leap in plaintiffs' logic. Clearly, investigation alone would at most have revealed the danger, although even that amounts to little more than speculation. It would not have alleviated the potential risk of harm. Something more would then have been required. Again, that 'something' is not easily defined. [Italics in original.]

"Based upon the facts presented, and resolving every conflict in favor of plaintiffs, this Court concludes as a matter-of-law that the Gomez defendants breached no legal duty that was a proximate cause of the tragic events which ultimately transpired. In reaching this decision, the Court draws upon much of the reasoning expressed in *Alva* v. *Cook* (1975) 49 Cal.App.3d 899 [123 Cal.Rptr. 166]. Although that case involved somewhat different facts, and arose in a different procedural setting, the issues are remarkably similar."

## DISCUSSION

■ Appellants' contention is dependent upon the assumption that Ms. Townsend was "brandishing and exhibiting a firearm for more than two months before Tyrone Davis' murder." We have reviewed the record and find no evidence whatsoever of the "brandishing and exhibiting" to which appellants refer.

As the trial court stated: "Plaintiff's most persuasive argument is that the Gomez defendants should at least have investigated further to determine whether Ms. Townsend posed a serious threat to the other tenants." We cannot assume, however, that the landlord could have discovered the information Mr. McGill belatedly obtained from another police officer after the fatal shooting, that Ms. Townsend's criminal records showed that she had shot her husband.

As was stated in *Leakes* v. *Shamoun* (1986) 187 Cal.App.3d 772, 776 [232 Cal.Rptr. 171], "an injured person must also show that the landlord had the right and ability to cure the condition. [Citations.]" The trial judge focused on this critical factor in granting the motion for summary judgment. We conclude that the trial court's decision was proper as a matter of law since appellants have also failed to establish what action the landlord could have taken, even with a reasonable investigation, with respect to Ms. Townsend's deteriorating mental condition. Nor have appellants shown that Ms. Townsend was not legally entitled to keep a handgun inside her premises. Other than the handgun's possession, Ms. Townsend had shown no dangerous tendencies. (See *id.,* at p. 778.)

The trial court carefully analyzed all the factors properly considered under *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]. It determined, as a matter of law, that there was no duty owed by the landlord to the tenant. There is no error.

The judgment is affirmed.

Woods (A. M.), P. J., and George, J., concurred.