[No. B166491. Second Dist., Div. Three. Jan. 4, 2005.]

JOEL ANDREWS et al., Plaintiffs and Appellants, v.
MOBILE AIRE ESTATES et al., Defendants and Respondents.

## Counsel

Joel Andrews and Telma Maria Andrews, in pro. per., and Paul Taylor Smith for Plaintiffs and Appellants.

Law Offices of Kristi Weiler Dean and Rebecca Davis-Stein for Defendants and Respondents.

Trevor A. Grimm and Craig Mordoh for Apartment Association of Greater Los Angeles as Amicus Curiae on behalf of Defendants and Respondents.

Dowdall Law Offices and Terry R. Dowdall for Western Manufactured Housing Communities Association as Amicus Curiae on behalf of Defendants and Respondents.

## Opinion

**KLEIN, P. J.**—Plaintiffs and appellants Joel Andrews and Telma Maria Andrews appeal a judgment following a grant of summary judgment in favor of defendants and respondents Mobile Aire Estates (Mobile Aire), Sierra Management LLC (Sierra), and William McGregor-Leyland (Leyland), Valerie Parker (Parker), Jose De Jesus (De Jesus), Christian Tovar (Tovar),

Christa De La Parra (De La Parra) and Janis Miller (Miller) (the individual defendants) (collectively, defendants).[1]

The Andrewses, the lessees of a space at a mobilehome park, sued the park owner, Mobile Aire, for breach of written contract, alleging Mobile Aire breached the lease by failing to take any action against a troublesome neighbor, William Molyneux (Molyneux), the lessee of an adjacent space at the park.

The trial court disposed of the breach of contract claim on the ground Mobile Aire did not owe the Andrewses a duty to evict Molyneux.

Inherent in the Andrewses' lease agreement with Mobile Aire was the implied covenant of quiet enjoyment (Civ. Code, § 1927), giving rise to a contractual duty in Mobile Aire to preserve their quiet enjoyment. The lease agreement, at paragraph 6.2, also expressly provided: "We will try to maintain the peace and quiet" of the premises and "[w]e will do what we can[.]" The additional implied covenant of good faith and fair dealing imposed upon Mobile Aire a duty to make a reasonable effort to fulfill the commitment it undertook in paragraph 6.2.

Therefore, Mobile Aire as a matter of law owed the Andrewses a contractual duty to preserve their quiet enjoyment. Duty is a given. The remaining issue is whether Mobile Aire breached its contractual duty by not taking any action against Molyneux. That question is for the trier of fact.

We conclude the trial court erred insofar as it granted summary judgment in favor of Mobile Aire on the Andrewses' cause of action for breach of the lease. The judgment is reversed in part and is otherwise affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The lease agreements.*

In 1986, the Andrewses entered into a written rental agreement for space A-1 with Mobile Aire, the owner of a mobilehome park in Covina (the park), which agreement periodically was extended.[2] In 1999, Molyneux signed a long-term rental agreement with Mobile Aire for the adjacent space, space A-2.

---

[1] This court invited amicus curiae briefs on behalf of both sides. Amicus curiae briefs in support of respondents have been filed by Western Manufactured Housing Communities Association and the Apartment Association of Greater Los Angeles.

[2] The Andrewses' lease includes a provision for attorney fees.

Mobile Aire's form rental agreements included the following pertinent provision at paragraph 6.2: "The park is an average residential neighborhood, it is not perfect. *We will try to maintain the peace and quiet*, but there may be times when whatever we do won't work. *We will do what we can* if you cannot get others to understand your complaints." (Italics added.)

### 2. *The conflict between the Andrewses and Molyneux and notice thereof to Mobile Aire.*

The relationship between the Andrewses and Molyneux was far from neighborly. Overall, between February 2000 through August 2002, approximately 50 calls were placed to the Covina Police Department by either the Andrewses or Molyneux.

On January 15, 2001, Tovar, an onsite manager at the park, received several "resident objection forms" from the Andrewses regarding Molyneux concerning incidents that occurred in September, October and November 2000, and on January 3, 2001. In these objection forms, the Andrewses complained: Molyneux repeatedly had splashed mud on their newly washed cars; had aimed a video camera into their living room; had subjected them to a racial epithet as well as other verbal abuse; and in the most recent incident, on January 3, 2001, Molyneux had driven down the middle of the street, forcing Joel Andrews to swerve and nearly run his vehicle into space K-6.

It was the policy of Mobile Aire and Sierra, the management company, not to allow their onsite managers to become involved in tenant or neighbor disputes due to their potential for danger. Instead, managers were directed to notify Sierra promptly for guidance. In accordance with this policy, Tovar contacted Sierra, which instructed him to advise the Andrewses and Molyneux to call police if they had a problem with their fellow residents. Tovar so advised the Andrewses and Molyneux.

On February 16, 2001, about one month after the Andrewses filed the resident objection forms with Tovar, the dispute became physical. Joel Andrews and Molyneux engaged in an altercation over fencing, which escalated into battery.

### 3. *Proceedings.*

#### a. *Pleadings.*

On August 6, 2001, the Andrewses filed suit against Molyneux as well as Mobile Aire, Sierra and the six individual defendants noted above, who were

managers of the park. The complaint included causes of action against Molyneux for battery and intentional infliction of emotional distress.[3]

For purposes of this appeal, the relevant causes of action are: the fifth cause of action against Mobile Aire and Sierra for breach of written contract, i.e., the rental agreement, based on their failure to take any action against Molyneux; and the sixth cause of action, against Mobile Aire, Sierra and the six individual defendants, for negligence in failing to exercise reasonable care in managing the park.[4]

The fifth cause of action, breach of written contract, pled in pertinent part: "39. Defendants issued rules for the subject mobilehome park including rules against battery, infliction of distress, obscene and offensive language, and loud noise. The users of the subject mobile home park are bound by the subject rules pursuant to their rental agreements. [¶] 40. Plaintiffs have performed all obligations to Defendants including abiding by the subject rules. [¶] 41. Plaintiffs at various times since August 2000 have informed Defendants of the conduct of . . . MOLYNEUX which violated the rules and requested action. [¶] 42. Defendants since August 5, 2000 have breached the agreement in that Defendants have failed to take action against . . . MOLYNEUX or do anything else to enforce the subject rules. [¶] 43. As a result of Defendants' failure to enforce the rules, . . . MOLYNEUX continued to engage in conduct in violation of the rules and has caused Plaintiffs physical injury, emotional distress, medical expenses and loss of income."[5]

---

[3] Molyneux is not a party to this appeal. (See fn. 7, *post.*)

[4] Additionally, the complaint included a seventh cause of action, wherein the Andrewses sought an injunction to compel Mobile Aire to commence eviction proceedings against Molyneux. The trial court also granted summary judgment in favor of defendants on said cause of action. However, it is unnecessary to review that aspect of the trial court's ruling. During the pendency of the appeal, Molyneux vacated the premises, thereby rendering moot the Andrewses' claim for injunctive relief.

[5] Although the fifth cause of action purports to state a claim for breach of written contract as against both Mobile Aire and Sierra, we find the fifth cause of action fails to state a claim against Sierra. The failure of a pleading to state facts sufficient to constitute a cause of action is not waived by a failure to demur and may be raised for the first time on appeal. (Code Civ. Proc., § 430.80, subd. (a); *Buford v. State of California* (1980) 104 Cal.App.3d 811, 826 [164 Cal.Rptr. 264].) We notified the parties of our concerns in this regard prior to oral argument. (Gov. Code § 68081.)

The complaint fails to allege facts showing the existence of an agreement between the Andrewses and Sierra, the management company. The only signatories to the subject rental agreement, which we treat as part of the pleading, are Mobile Aire and Joel and Telma Andrews. Therefore, the fifth cause of action fails to state facts sufficient to constitute a cause of action against Sierra for breach of written contract. Accordingly, the grant of summary judgment in favor of Sierra on the fifth cause of action was correct in result and will be upheld. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

The sixth cause of action alleged defendants were negligent in failing to take any action against Molyneux. The Andrewses pled, inter alia: "Defendants made an intentional conscious decision not to take action against . . . MOLYNEUX with awareness that this would probably result in future conduct by . . . MOLYNEUX that would result in injury to Plaintiffs."

Mobile Aire, Sierra and the six individual defendants answered the complaint, denying the allegations and asserting numerous affirmative defenses.

### b. *The motion for summary judgment.*

On December 30, 2002, Mobile Aire, Sierra and the six individual defendants filed a motion for summary judgment on the following grounds: the negligence claim was meritless because they did not owe the Andrewses a duty of care due to the absence of any prior similar incidents of physical violence, making the February 16, 2001 incident unforeseeable; there was no evidence any negligence by defendants was a substantial factor in plaintiffs' injuries; the Andrewses lacked standing to enforce the rental agreement between Molyneux and Mobile Aire because the Andrewses at best were incidental beneficiaries of the Molyneux/Mobile Aire lease; and the rental agreement executed by the Andrewses did not provide for eviction of other residents on demand.

The Andrewses' opposition papers argued, inter alia, that additional discovery was needed to address the issues of duty and notice and they requested a continuance for that purpose.

### c. *Trial court's ruling.*

On February 6, 2003, the matter came on for hearing.[6] The trial court denied the Andrewses' request for a continuance and granted summary judgment in favor of defendants, ruling: "1) . . . [N]othing in the [rental] agreements . . . imposed a duty on moving parties to evict Molyneux for alleged violation of the Park rules, as distinct from a right to terminate

---

[6] At the summary judgment hearing, the trial court on its own motion ruled the incident reports and police reports which were part of the *moving* papers constituted inadmissible hearsay. However, the Andrewses did not object to defendants' evidentiary submissions. To the contrary, the Andrewses rely on the incident reports and police reports proffered by defendants to establish that defendants admittedly were aware of Molyneux's conduct. The summary judgment statute specifically provides that any evidentiary objections not made at the hearing "shall be deemed waived." (Code Civ. Proc., § 437c, subds. (b)(5), (d).) Thus, the Andrewses had the right to waive any hearsay objections and to acquiesce in the defendants' evidentiary submissions. The trial court erred in interposing and sustaining its own hearsay objection to defendants' moving papers. Therefore, in our review, we consider defendants' moving papers in their entirety.

Molyneux['s tenancy] which moving parties had the discretion to enforce or not to enforce. [¶] 2) The rental agreement between Molyneux and Sierra did not confer incidental benefits on plaintiffs, and was intended for the mutual benefit of Molyneux and Sierra alone. [¶] 3) Nothing in any of the rental agreements, including those between plaintiffs and Sierra, imposed a contractual duty to evict Molyneux. [¶] 4) Moving parties owed plaintiffs no duty to evict Molyneux under a negligence theory based on *Davis v. Gomez* (1989) 207 Cal.App.3d 1401 [255 Cal.Rptr. 743] . . . ."

The trial court entered judgment in favor of Mobile Aire, Sierra and the six individual defendants. The Andrewses filed a timely notice of appeal.[7]

## CONTENTIONS

The Andrewses contend: defendants were not entitled to summary judgment on the cause of action for negligence because a landlord has a duty to protect tenants from assault by other tenants and there is a triable issue of fact as to whether defendants breached their duty of care; defendants were not entitled to summary judgment on the cause of action for breach of contract because the contract claim is not based on a third party beneficiary theory; Mobile Aire failed to preserve their right to quiet enjoyment under their lease agreement; and the trial court abused its discretion in denying their request for a continuance to conduct additional discovery.

## DISCUSSION

1. *Standard of appellate review.*

As stated in *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877], summary judgment "motions are to expedite litigation and eliminate needless trials. [Citation.] They are granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.]"

A defendant meets its burden upon such a motion by showing one or more essential elements of the cause of action cannot be established, or by establishing a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826,

---

[7] The record reflects that following the grant of summary judgment in favor of these defendants, the Andrewses proceeded to litigate their claims against Molyneux. After a nonjury trial, the trial court entered judgment in favor of the Andrewses on their claims for battery and intentional infliction of emotional distress arising out of the February 16, 2001 incident, and awarded them a total of $12,502 in damages.

849 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant has shown the plaintiff cannot establish at least one element of the cause of action "by showing that the plaintiff does not possess, and cannot reasonably obtain, needed evidence . . . ." (*Id.,* at p. 854.) Once the moving defendant has met its initial burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action or a defense thereto. (*Id.,* at p. 849.)

 We review the trial court's ruling on a motion for summary judgment under the independent review standard. (*Rosse v. DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

 2. *As the landlord, Mobile Aire owed a duty to preserve the quiet enjoyment of all its tenants, including the Andrewses.*

 We begin with a discussion of the implied covenant of quiet possession, which gives rise to duty in the landlord " 'to preserve the quiet enjoyment of all tenants.' " (*Davis v. Gomez, supra,* 207 Cal.App.3d at p. 1404.)

 a. *General principles relating to the implied covenant of quiet enjoyment.*

 (1) *Quiet enjoyment is an implied term of every lease agreement.*

 In the absence of language to the contrary, *every lease* contains an implied covenant of quiet enjoyment, whereby the landlord impliedly covenants that the tenant shall have quiet enjoyment and possession of the premises. (*Petroleum Collections Inc. v. Swords* (1975) 48 Cal.App.3d 841, 846 [122 Cal.Rptr. 114]; *Guntert v. City of Stockton* (1976) 55 Cal.App.3d 131, 138 [126 Cal.Rptr. 690].)[8] The covenant of quiet enjoyment "insulates the tenant against any act or omission on the part of the landlord, or anyone claiming under him, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy. (*Green v. Superior Court* [(1974)] 10 Cal.3d 616, 625, fn. 10 [111 Cal.Rptr. 704, 517 P.2d 1168]; 49 Am.Jur.2d, Landlord and Tenant, § 336, p. 351.)" (*Petroleum Collections Inc. v. Swords, supra,* 48 Cal.App.3d at p. 846.)

 The implied covenant of quiet enjoyment is partially codified in Civil Code section 1927, enacted in 1872, which provides: "An agreement to let

---

[8] Because the implied covenant of quiet enjoyment is present in every lease in the absence of language to the contrary (*Petroleum Collections, Inc., supra,* 48 Cal.App.3d at p. 846), the cited cases, although involving commercial tenants, are equally applicable to residential tenancies.

upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same." The statutory covenant "guarantees the tenant against rightful assertion of a paramount title." (*Guntert, supra,* 55 Cal.App.3d at p. 138.) Beyond the statutory covenant, the landlord is bound to refrain from action which interrupts the tenant's beneficial enjoyment. (*Ibid.*)

(2) *Protection under implied covenant of quiet enjoyment is similar to that afforded by implied covenant of good faith and fair dealing.*

The implied covenant of quiet enjoyment and the implied covenant of good faith and fair dealing overlap to impose similar duties of care. (*Ocean Services Corp. v. Ventura Port Dist.* (1993) 15 Cal.App.4th 1762, 1781 [19 Cal.Rptr.2d 750].) A covenant of good faith and fair dealing also is implied in every contract, including leases. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371–372 [6 Cal.Rptr.2d 467, 826 P.2d 710].)

A typical formulation of the burden imposed by the implied covenant of good faith and fair dealing is " ' "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." ' (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032], quoting *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883].) Or, to put it another way, the 'implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose.' (*Schoolcraft* v. *Ross* (1978) 81 Cal.App.3d 75, 80 [146 Cal.Rptr. 57].)" (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393 [272 Cal.Rptr. 387].)

(3) *Substantial interference is required to establish a breach of quiet enjoyment.*

Minor inconveniences and annoyances are not actionable breaches of the implied covenant of quiet enjoyment. To be actionable, the landlord's act or omission must substantially interfere with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy. (*Petroleum Collections Inc. v. Swords, supra,* 48 Cal.App.3d at p. 846; see, e.g., *Pierce v. Nash* (1954) 126 Cal.App.2d 606, 614 [272 P.2d 938] [landlord breached tenant's right to quiet enjoyment by installing interior building supports which unnecessarily interfered with tenant's billiards business]; *Sierad v. Lilly* (1962) 204 Cal.App.2d 770, 775 [22 Cal.Rptr. 580] [landlord breached covenant of quiet enjoyment by denying retail tenant use of adjoining parking

spaces which were essential to tenant's use and enjoyment of the property]; Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2003) § 4:8, p. 4-5.)

### (4) *Perpetrator need not be the landlord personally.*

The perpetrator of the interference with the tenant's quiet enjoyment need not be the landlord personally. There may be an actionable breach where the interference is caused by a neighbor or tenant claiming under the landlord. (*Petroleum Collections Inc. v. Swords, supra,* 48 Cal.App.3d at p. 846; see, e.g., *Lee v. Placer Title Co.* (1994) 28 Cal.App.4th 503, 512 [33 Cal.Rptr.2d 572] [shopping center tenant claimed covenant was breached by landlord's failure to remedy ventilation problems caused by adjoining dry cleaning business].)[9]

### (5) *Remedies for breach of the covenant of quiet enjoyment.*

An interference by the landlord, or by someone claiming under the landlord (*Lee v. Placer Title Co., supra,* 28 Cal.App.4th at p. 512), "by which the tenant is deprived of the beneficial enjoyment of the premises amounts to a constructive eviction if the tenant so elects and surrenders possession, and the tenant will not be liable for rentals for the portion of the term following his eviction. [Citations.]" (*Kulawitz v. Pacific etc. Paper Co.* (1944) 25 Cal.2d 664, 670 [155 P.2d 24].) Upon surrendering possession of the premises, the tenant is relieved of the obligation to pay rent and may sue for damages, or may plead damages by way of offset in an action brought by the landlord to recover any unpaid rent that accrued prior to the surrender of the premises. (*Petroleum Collections Inc. v. Swords, supra,* 48 Cal.App.3d at p. 847.)

Alternatively, a tenant may elect "to stand upon the lease, remain in possession and sue for breach of contract damages . . . . (*Kulawitz v. Pacific etc. Paper Co.*)" (*Guntert v. City of Stockton, supra,* 55 Cal.App.3d at p. 141) as well as for injunctive relief. (*Petroleum Collections Inc. v. Swords, supra,* 48 Cal.App.3d at p. 847.)

---

[9] The implied covenant of quiet enjoyment runs between the tenants and the landlord from whom they are renting the property. Therefore, while nuisance activities on neighboring premises, not owned or controlled by the aggrieved tenant's landlord, may interfere with a tenant's quiet enjoyment, such conduct does not amount to a breach of the covenant of quiet enjoyment as between tenant and landlord. (Friedman, et al., Cal. Practice Guide: Landlord-Tenant, *supra,* § 4:9.5, pp. 4-5 to 4-6.)

██ Civil Code section 3304 prescribes the measure of damages for breach of the covenant of quiet enjoyment.[10] Additionally, case law holds a tenant suing for breach of the covenant of quiet enjoyment may recover contract damages in accordance with Civil Code section 3300—an amount that will compensate the aggrieved party for all the detriment caused by the breach or which in the ordinary course would be a likely result. (*Guntert v. City of Stockton, supra,* 55 Cal.App.3d at pp. 141–142.) Thus, in an appropriate case, recovery may include, inter alia, lost profits (*Guntert, supra,* at p. 143), lost business goodwill (*Johnson v. Snyder* (1950) 99 Cal.App.2d 86, 89–90 [221 P.2d 164]) and moving expenses (*ibid.*).

> (6) *Preliminary conclusion re Mobile Aire's implied contractual duty.*

Inherent in the lease agreement between the Andrewses and Mobile Aire was the implied covenant of quiet enjoyment, giving rise to a contractual duty in Mobile Aire to preserve the Andrewses' quiet enjoyment of the premises.

> b. *The Mobilehome Residency Law expressly authorizes mobilehome park owners to take necessary steps to preserve the quiet enjoyment of mobilehome park tenants.*

Because this tenancy relates to a site in a mobilehome park, we address the application of the Mobilehome Residency Law (MRL) (Civ. Code, § 798 et seq.) to the issues presented herein.

██ The MRL is an extensive statutory scheme governing mobilehome park tenancies. It addresses a host of issues, ranging from the required contents of rental agreements (Civ. Code, § 798.15) and exemption from local rent control measures (Civ. Code, § 798.17), to tree trimming (Civ. Code, § 798.37.5) and pets (Civ. Code, § 798.33).

For purposes of this discussion, the relevant provisions are Civil Code sections 798.55 and 798.56. In order to protect mobilehome park tenants, the Legislature conferred upon them certain protections from eviction, while authorizing a mobilehome park owner to terminate a mobilehome park tenancy in specified circumstances. (*Ibid.*)

---

[10] Civil Code section 3304 provides: "The detriment caused by the breach of a covenant of . . . 'quiet enjoyment,' in a grant of an estate in real property, is deemed to be: [¶] 1. The price paid to the grantor; or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore at the time of the grant to the value of the whole property; [¶] 2. Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding five years; [¶] 3. Any expenses properly incurred by the covenantee in defending his possession."

The Legislature declared its intent at Civil Code section 798.55, stating: "(a) The Legislature finds and declares that, because of the high cost of moving mobilehomes, the potential for damage resulting therefrom, the requirements relating to the installation of mobilehomes, and the cost of landscaping or lot preparation, it is necessary that the owners of mobilehomes occupied within mobilehome parks be provided with the unique protection from actual or constructive eviction afforded by the provisions of this chapter." In furtherance of that end, the statute provides: *"The management may not terminate or refuse to renew a tenancy, except for a reason specified in this article . . . ."* (Civ. Code, § 798.55, subd. (b)(1), italics added.)

■ The authorized grounds for termination of a mobilehome park tenancy are enumerated in Civil Code section 798.56, which provides in relevant part: *"A tenancy shall be terminated by the management only for one or more of the following reasons*: [¶] (a) Failure of the homeowner or resident to comply with a local ordinance or state law or regulation relating to mobilehomes within a reasonable time after the homeowner receives a notice of noncompliance from the appropriate governmental agency. [¶] (b) *Conduct by the homeowner or resident, upon the park premises, that constitutes a substantial annoyance to other homeowners or residents.* [¶] . . . [¶] (d) Failure of the homeowner or resident to comply with a reasonable rule or regulation of the park that is part of the rental agreement or any amendment thereto." (Italics added.)

■ In addition to authorizing the eviction of an offending tenant, the MRL authorizes a mobilehome park owner to seek *injunctive relief* to enjoin a violation. Civil Code section 798.88 provides: "(a) In addition to any right under Article 6 (commencing with Section 798.55) to terminate the tenancy of a homeowner, any person in violation of a reasonable rule or regulation of a mobilehome park may be enjoined from the violation as provided in this section. [¶] (b) A petition for an order enjoining a continuing or recurring violation of any reasonable rule or regulation of a mobilehome park may be filed by the management thereof with the superior court for the county in which the mobilehome park is located."

■ In short, while the MRL limits the eviction rights of mobilehome park owners, it expressly preserves the park owners' ability to secure the quiet enjoyment of mobilehome park tenants by authorizing park owners to pursue eviction or injunctive relief against offending tenants.

c. *Trial court's ruling Mobile Aire had no contractual duty to evict Molyneux confused the issues of duty and breach; triable issues of fact exist relating to whether Mobile Aire breached its obligation under the lease to preserve the Andrewses' quiet enjoyment.*

In granting summary judgment on the breach of contract claim, the trial court ruled "nothing in the [rental] agreements . . . imposed a duty on moving parties to evict Molyneux for alleged violation of the Park rules, as distinct from a right to terminate Molyneux['s tenancy] which moving parties had the discretion to enforce or not to enforce" and that "[n]othing in any of the rental agreements . . . imposed a contractual duty to evict Molyneux."

The trial court's ruling confused the issues of contractual duty and breach. As explained above, as a matter of law, inherent in the lease agreement between Mobile Aire and the Andrewses was the implied covenant of quiet enjoyment. Consequently, Mobile Aire owed the Andrewses a contractual duty to preserve their quiet enjoyment.

Thus, the issue is not duty; a contractual duty exists. The issue is whether Mobile Aire breached its obligation under the lease by not taking any action against Molyneux. That question presents triable issues of fact, including whether the level of interference by Molyneux was sufficient to amount to a deprivation of the Andrewses' right to quiet enjoyment, whether Mobile Aire had notice of the interference, the nature of any investigative and corrective measures a reasonable landlord should have taken (e.g., a warning, a petition for injunctive relief pursuant to Civ. Code § 798.88, or other measures to secure Molyneux's compliance), and thereafter, the extent of the Andrewses' recoverable damages.

██ We express no opinion with respect to any of these matters. We simply hold Mobile Aire owed a contractual obligation to the Andrewses, as to any tenant, to preserve their right of quiet enjoyment.

In sum, the grant of summary judgment on the breach of contract claim on the ground Mobile Aire had no duty under the lease to evict Molyneux was error.[11]

---

[11] At oral argument on appeal, Mobile Aire conceded that as a general rule, a landlord owes a duty to preserve a tenant's quiet enjoyment. However, Mobile Aire asserted that under the facts of this case, no duty was owed because the Andrewses failed to give Mobile Aire timely notice of their grievances. The contention is unavailing. The declaration of Tovar, the onsite manager, filed in support of the moving papers, stated: "On January 15, 2001, I received several written complaints from Joel and Telma Andrews regarding their neighbor William Molyneux. These complaints were regarding incidents that occurred in September, October and

### 3. *Mobile Aire's express contractual duty pursuant to paragraph 6.2 of the lease.*

In addition to owing an implied duty to the Andrewses to preserve their quiet enjoyment pursuant to the lease's implied covenant to that effect, Mobile Aire owed the Andrewses an express duty pursuant to paragraph 6.2 of the lease agreement.

As indicated, paragraph 6.2 of Mobile Aire's form lease provides: "The park is an average residential neighborhood, it is not perfect. *We will try to maintain the peace and quiet,* but there may be times when whatever we do won't work. *We will do what we can* if you cannot get others to understand your complaints." (Italics added.)

Paragraph 6.2 simply makes express the obligation that is imposed by the implied covenant of quiet enjoyment. In this provision, Mobile Aire explicitly undertook to try to protect the Andrewses' quiet enjoyment of the premises.

The implied covenant of good faith and fair dealing imposed upon Mobile Aire a duty to make a reasonable effort to fulfill the promise it made in paragraph 6.2 of the lease. Otherwise, paragraph 6.2 would be rendered hollow. As explained above, the implied covenant of good faith and fair dealing " 'imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose.' [Citation.]" (*Careau & Co. v. Security Pacific Business Credit, Inc., supra,* 222 Cal.App.3d at p. 1393.)

Accordingly, Mobile Aire contractually was obligated to the Andrewses to make a reasonable effort to "maintain the peace and quiet" of the premises pursuant to the express language of paragraph 6.2, supplemented by the implied covenant of good faith and fair dealing. Whether Mobile Aire breached that duty requires resolution by the trier of fact.

### 4. *The trial court erred in characterizing the Andrewses as incidental third party beneficiaries of the Mobile Aire/Molyneux lease.*

Mobile Aire argued, and the trial court found, the Andrewses lacked standing to enforce the rental agreement between Molyneux and Mobile Aire

---

November 2000 and January 3, 2001." Given the contents of the Tovar declaration, Mobile Aire's contention the evidence conclusively establishes it lacked sufficient notice of the Andrewses' grievances is meritless. The issue of the adequacy of the notice to Mobile Aire is to be determined by the trier of fact.

because the Andrewses at best were incidental third party beneficiaries of the Molyneux/Mobile Aire lease.[12]

The trial court erred in viewing the Andrewses' claim as an attempt by a third party to enforce a provision of the Mobile Aire/Molyneux lease. The Andrewses do not purport to be third party beneficiaries of the lease agreement between Molyneux and Mobile Aire.

The Andrewses are standing upon their own lease agreement with Mobile Aire, which agreement gave rise to its own rights and obligations, based on the implied covenant of quiet enjoyment and paragraph 6.2 of the lease. The Andrewses' cause of action against Mobile Aire for breach of the lease is predicated on express and implied obligations that Mobile Aire owed the Andrewses pursuant to the lease agreement between the Andrewses and Mobile Aire.[13]

5. *Remaining issues.*

 a. *Trial court properly granted summary judgment in favor of defendants on the negligence claim.*

The key issue in determining whether defendants owed a duty to protect Joel Andrews from the February 16, 2001 battery by Molyneux is the foreseeability of harm. (See, e.g., *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1189 [91 Cal.Rptr.2d 35, 989 P.2d 121]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

In *Madhani v. Cooper* (2003) 106 Cal.App.4th 412 [130 Cal.Rptr.2d 778], the court held the defendant landlords owed a duty of care to protect the plaintiff/tenant from foreseeable future assaults by Moore, a fellow tenant and neighbor. (*Id.*, at p. 415.) There, the evidence showed "the landlords knew or should have known Moore had engaged in *repeated acts of assault and battery* against Madhani as well as her mother." (*Ibid.*, italics added.) Therefore, "it was foreseeable Moore's violent outbursts and physical assaults would eventually result in serious injury to Madhani." (*Id.*, at p. 416.)

---

[12] Incidental third party beneficiaries may not enforce a contract. (Civ. Code, § 1559; *Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [113 Cal.Rptr. 585, 521 P.2d 841].)

[13] As explained, the Andrewses sued Mobile Aire directly under their own lease and they do not claim to be third party beneficiaries of the Mobile Aire/Molyneux lease. Therefore, *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1414 [235 Cal.Rptr. 165], which rejected the plaintiffs/lessees' claim they were third party beneficiaries of the lease between the lessor and another lessee, is inapposite.

*Davis v. Gomez, supra,* 207 Cal.App.3d 1401, involving a failed wrongful death action against the owner of an apartment building where one tenant shot and killed another, presented the opposite fact situation. Plaintiffs, the decedent's heirs, contended the landlord owed a duty to take measures to monitor or control the alleged psychotic behavior of the tenant. (*Id.,* at p. 1402.) *Davis* found no duty was owed. It explained: "Appellants' contention is dependent upon the assumption that [the perpetrator] was 'brandishing and exhibiting a firearm for more than two months before [the] murder.' *We have reviewed the record and find no evidence whatsoever of the 'brandishing and exhibiting' to which appellants refer.*" (*Id.,* at p. 1406, italics added.)

In the instant case, none of the incidents which preceded the February 16, 2001 battery involved an assault or battery. Rather, the incident reports complained of a course of harassment, verbal insults and annoyances. Further, the January 3, 2001 incident, in which Molyneux drove his car in a manner that forced Joel Andrews to swerve his vehicle to avoid an accident, could be construed as an instance of careless driving. We conclude there was an insufficient showing here to put defendants on notice of Molyneux's propensity for violence.

Accordingly, the trial court properly granted summary judgment in favor of defendants on the negligence claim.

### b. *No abuse of discretion in denial of continuance.*

▄▄▄ Lastly, the Andrewses contend the trial court abused its discretion in denying their request for a continuance of the summary judgment hearing for the purpose of conducting additional discovery to oppose summary judgment. The decision whether to grant a continuance under Code of Civil Procedure section 437c, subdivision (h), is reviewed for an abuse of discretion. (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633 [115 Cal.Rptr.2d 780].) Given the procedural history of this case, the trial court acted within its discretion in refusing a continuance.

The complaint was filed August 6, 2001. Defendants' motion for summary judgment was filed and served on December 30, 2002, with a hearing date of February 6, 2003.

On January 24, 2003, along with their request for a continuance, the Andrewses served defendants with 33 requests for production of documents and 31 specially prepared interrogatories with responses due February 28, 2003. However, the discovery cut-off date was February 10, 2003, with trial

scheduled for March 11, 2003 and therefore imminent. Even if the trial court had granted a continuance of the summary judgment hearing, the Andrewses' belated discovery could not have been completed in accordance with the discovery cut-off date. Given these circumstances, we perceive no abuse of discretion in the denial of a continuance.

## CONCLUSION

We recognize a neighbor dispute may present a landlord with a difficult situation. Nonetheless, the implied covenant of quiet enjoyment, which the law implies in every rental agreement, is not a novel concept. Further, in paragraph 6.2 of the lease, Mobile Aire explicitly undertook to try to protect the Andrewses' quiet enjoyment of the premises by promising "[w]e will try to maintain the peace and quiet[.]" The recognition herein that Mobile Aire owed the Andrewses a *contractual* duty to preserve their quiet enjoyment is simply an acknowledgement of the obligation which is implied by law and which Mobile Aire expressly undertook in the lease agreement.

In moving for summary judgment, Mobile Aire asserted its policy not to allow onsite managers to become involved in tenant or neighbor disputes due to the potential for danger, and that "[t]he manager advises residents of the park to call the police if they had a problem with another resident of the park." Obviously, once tenants or residents become embroiled in an altercation, that is a matter to be handled by peace officers and not by the property manager.

However, resort to law enforcement is not the issue here. A mobile-home park owner cannot disregard conduct by a tenant upon the park premises that constitutes a substantial annoyance to other homeowners or residents. (Civ. Code, § 798.56, subd. (b).) Faced with such a situation, the covenant of quiet enjoyment requires a reasonable response by the landlord, which may include conducting an investigation and thereafter, taking appropriate action, which may include, inter alia, the issuance of a warning to the offending party, the pursuit of injunctive relief against the tenant to enjoin the violation (*id.*, § 798.88), or, if necessary, the commencement of eviction proceedings (*id.*, § 798.56).

## DISPOSITION

The judgment is reversed insofar as it granted summary judgment in favor of Mobile Aire on the fifth cause of action for breach of written contract, and is otherwise affirmed. The Andrewses shall recover their costs on appeal.

Croskey, J., and Kitching, J., concurred.