Filed 11/22/24  Fitness & Sports Clubs v. AISBD CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| FITNESS & SPORTS CLUBS, LLC, | B328480 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV47542) |
| v. | |
| AISBD, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed.

Saul Ewing, Dawn B. Eyerly; Klehr Harrison Harvey Bransburg, A. Grant Phelan and Mary Ellen O'Laughlin for Plaintiff and Appellant.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Mark J. Rosenbaum and Elsa Horowitz for Defendant and Respondent.

————————————

In 1977, the predecessor-in-interest to plaintiff and appellant Fitness & Sports Clubs, LLC (Fitness) leased a building in West Los Angeles from defendant and respondent AISBD, LLC (AISBD) to operate a health club.[1]  In March 2020, state and local regulations resulting from the COVID-19 pandemic barred the operation of public gyms and fitness centers for most of the following year.

This appeal presents the question of whether Fitness was obligated to continue paying rent during the period when state and local regulations prevented persons from visiting a public gym.  Fitness argues the answer is no, both under provisions in the lease, and under the legal doctrines of temporary impracticability and frustration of purpose.  AISBD disagrees, arguing that temporary impracticability does not apply, that there is no doctrine of temporary frustration of purpose in California, and that the relevant provisions in the lease did not excuse Fitness from paying rent.

The trial court agreed with AISBD and sustained its demurrer without leave to amend to Fitness's complaint seeking reimbursement for rent it paid while the closure orders were in effect.  We conclude that the lease contained no warranty against government interference with its operation of the facility, and that the doctrines of impracticability and frustration of purpose

_____

[1] The original tenant under the lease was Holiday Spa Health Clubs of California, which later became known as Bally Total Fitness of California, Inc.  Fitness succeeded as tenant under the lease by no later than 2013.  AISBD was formerly known as Anchor Investments.  For the sake of simplicity, we refer to both parties throughout this opinion under their current names.

do not relieve Fitness of its obligation to pay rent.[2] We therefore affirm.

## FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

The original lease, dated June 1, 1977, called for a 10-year term, but over the ensuing years, the parties agreed to a series of amendments that collectively extended the term through May 31, 2028. The lease stated that "[t]he [p]remises shall be used and occupied only for a [h]ealth [c]lub,"[3] and neither party claims that Fitness has ever used the premises for any other purpose.

On March 16, 2020, in response to the onset of the COVID-19 pandemic, the Los Angeles County Department of Public Health issued an order prohibiting all indoor public and private gatherings and requiring all gyms and fitness centers within the county to close. On June 12, 2020, gyms and fitness centers were permitted to reopen on a limited basis, but they were once again ordered to close on July 13, 2020.[4] Los Angeles County allowed gyms to reopen at 10 percent capacity on March 17, 2021, with capacity increasing over the next few months until June 14, 2021, when the restrictions ended.

---

[2] Because we conclude that AISBD did not breach the lease, we do not reach the issue of whether Fitness satisfied its obligation to notify AISBD of a breach.

[3] The lease originally allowed Fitness to sublet the top floor of the premises to a tenant of its choice, but a 1996 amendment removed that provision.

[4] We refer to these orders collectively as the closure orders and the period when the closure orders were in effect as the closure period.

As part of the COVID-19 emergency response, state and local governments imposed moratoriums on commercial evictions, but did not relieve tenants of the obligation to pay rent. On April 29, 2020, Fitness and AISBD agreed to a new amendment to the lease under which all of the rent due in May 2020 was deferred, along with half of the rent from June through September 2020. Fitness was obligated to make up the deficiency by paying extra rent from June 1, 2021 through the end of the lease term. Both parties agree that Fitness paid the rent due under the amended lease throughout the closure period.

On December 11, 2020, Fitness filed a complaint seeking reimbursement of the rent it had paid since the beginning of the pandemic and a declaration that it was excused from paying rent while the closure orders remained in effect. Fitness amended the complaint twice, the first time on its own accord, and again in response to the trial court's order sustaining AISBD's demurrer with leave to amend. In the operative second amended complaint, Fitness alleged causes of action for breach of the lease, monies had and received, monies paid by mistake, and declaratory relief. Fitness claimed that in the lease's covenant of quiet enjoyment, AISBD "agreed and warranted that [Fitness] would have the right to use the [p]remises for a health club," and that the closure orders constituted a breach of that covenant. Fitness also argued that its payment of rent during the closure orders was excused under the doctrines of temporary impossibility, impracticability, and frustration of purpose, as well as under Civil Code[5] section 1511, which excuses a party from performing an obligation "[w]hen such performance or offer is

_____

[5] Subsequent statutory references are to the Civil Code.

4

prevented or delayed . . . by the operation of law" (*id*., subd. (1)) or "by an irresistible, superhuman cause" (*id*., subd. (2)).

AISBD demurred, arguing that Fitness had failed to state a claim on any of its causes of action because Fitness failed to allege any acts constituting a breach of the lease, and because nothing in the lease, section 1511, or any of the legal doctrines Fitness cited excused Fitness from paying rent while the closure orders were in effect.

The trial court agreed and sustained the demurrer without leave to amend. The court concluded that the complaint's invocation of section 1511 was counterproductive. If, as Fitness alleged, the pandemic and associated closure orders constituted an "irresistible, superhuman cause" (*id*., subd. (2)), then AISBD was excused from performing any obligation under the lease to "ensur[e] that [Fitness] would have access to the subject premises to use as a health club." In the court's view, this was "a fundamental deficiency in [Fitness]'s allegations" that "undermine[d] the premise of [its] claims that [AISBD]'s breach can be predicated on its failure to ensure [Fitness]'s use of the property." Accordingly, the court dismissed the complaint with prejudice.

## STANDARD OF REVIEW

" 'The purpose of a demurrer is to test the sufficiency of a complaint by raising questions of law.' [Citation.]" (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1143.) "We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law." (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1190.) In doing so, " '[w]e assume the truth of the properly pleaded factual allegations, [and] facts that reasonably can be

5

inferred from those expressly pleaded.' [Citation.] But we do not assume the truth of 'contentions, deductions, or conclusions of law.' [Citation.] We liberally construe the complaint 'with a view to substantial justice between the parties,' drawing 'all reasonable inferences in favor of the asserted claims.' [Citations.]" (*Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 919.) "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action . . . ." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872.) "[B]ecause we are reviewing the trial court's ruling and not its reasoning, we may affirm on any ground supported by the record regardless of whether the trial court relied upon it." (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960.)

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609.) "Where, however, amendment could not correct a deficiency in the complaint or where the action is barred as a matter of law, the demurrer is properly sustained without leave to amend." (*State of California Auto. Dismantlers Assn. v. Interinsurance Exchange* (1986) 180 Cal.App.3d 735, 742.) In this case, Fitness does not propose any amendments to its complaint.

## DISCUSSION

### A. AISBD Did Not Warrant Fitness's Operation of a Health Club Against Government Interference

Fitness's central contention is that, in the lease, AISBD warranted that Fitness would be able to operate the facility as a health club.  Thus, in Fitness's view, AISBD was in breach of its obligation while the closure orders were in effect.  As noted above, the trial court rejected this argument on the basis of section 1511, subdivision (2), which provides that the failure to "perform[] . . . an obligation . . . is excused . . . [¶] . . . [¶] . . . [w]hen it is prevented or delayed by an irresistible, superhuman cause . . . ."  Fitness argues the court's analysis was incorrect because there was no basis for applying section 1511 only to the benefit of AISBD:  "Both parties were affected by the COVID-19 pandemic and related closure orders.  As a result, both parties were excused from performing their obligations."  We need not decide whether Fitness's interpretation of section 1511 has merit because we conclude the lease does not include a warranty of the kind Fitness alleges, and AISBD did not breach any obligations under the lease.

The lease contains no express warranty against government interference.  Nevertheless, Fitness claims such a warranty derives from two provisions of the lease.  First, section 6.1 of the lease provides that "[t]he [p]remises shall be used and occupied only for a [h]ealth [c]lub."  Second, section 26 of the lease contains a covenant of quiet enjoyment, which states that AISBD "warrants that [it] has good and merchant[a]ble title to the [p]remises and that [AISBD] has full right and authority to enter into this [l]ease and that [Fitness] shall have the quiet and

7

peaceful enjoyment of the [p]remises during the term and any options thereon against all persons lawfully claiming the same."

Neither of these provisions operates as Fitness claims. Section 6.1, by its own terms, is phrased as a restriction on Fitness's use of the premises, not a guarantee. It states that the premises may be used "*only* for a [h]ealth [c]lub" (italics added), not that it will always be legal or practical for Fitness to do so. Although both parties contemplated that Fitness would operate a health club, nothing in the lease indicates that they intended to shift the burden to AISBD if it became illegal to do so. To the contrary, the next provision of the lease, section 6.2, puts the onus on Fitness, "at [its] expense, [to] comply promptly with all applicable statutes, ordinances, rules, regulations, orders and requirements in effect during the term or any part of the term hereof regulating the use by [Fitness] of the [p]remises."

Nor does the lease's covenant of quiet enjoyment support Fitness's argument. The covenant of quiet enjoyment is well-established in California law and serves to "insulate[] the tenant against any act or omission *on the part of the landlord, or anyone claiming under him*, which interferes with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy." (*Petroleum Collections Inc. v. Swords* (1975) 48 Cal.App.3d 841, 846, italics added.) Because this covenant "runs between the tenants and the landlord from whom they are renting the property" (*Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 590, fn. 9), it does not apply to actions over which the landlord has no control. Thus, for example, "while nuisance activities on neighboring premises, not owned or controlled by the aggrieved tenant's landlord, may interfere with a tenant's quiet enjoyment, such conduct does not amount to a

breach of the covenant of quiet enjoyment as between tenant and landlord." (*Ibid.*)

We are aware of no case holding a landlord liable under a covenant of quiet enjoyment for disruptions created by the government, and Fitness does not cite any. To be sure, there is a "strong public policy favoring freedom of contract in connection with a commercial lease" (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 363), and if the parties to the lease had desired to create an unusually broad covenant of quiet enjoyment, they were free to do so. But nothing in the language of the lease supports an inference that the parties intended to extend the covenant in the way Fitness alleges. The covenant occurs in the context of a warranty that AISBD had "good and merchant[a]ble title to the [p]remises" and "authority to enter into [the l]ease," and guarantees Fitness's "quiet and peaceful enjoyment of the [p]remises during the [lease] term and any options thereon against all persons lawfully claiming the same."

Thus, the covenant protected Fitness against others claiming to have a right to occupy the premises. Even if, for the sake of argument, the parties intended for the government to be encompassed within "all persons," Fitness does not allege that the government "lawfully claim[ed] the same." In other words, the government did not assert title to the property, nor authority to enter into the lease, nor a right to quiet enjoyment of the facility for itself. "Whether language in a contract is ambiguous is a question of law." (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912.) "A contract is ambiguous only if it 'is susceptible of more than one reasonable interpretation' " (*Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860,

9

894), and "ambiguity cannot be based on a strained interpretation" of contractual language (*Producers Dairy Delivery Co.*, *supra*, at p. 912). The scope of the lease's covenant of quiet enjoyment is not ambiguous and does not support Fitness's interpretation.

## B. Fitness Is Not Entitled to Reimbursement of Rent Under the Doctrines of Temporary Impracticability and Frustration of Purpose

Fitness next contends the trial court erred in rejecting its arguments that the doctrines of temporary impracticability[6] and frustration of purpose excused it from paying rent while the closure orders were in effect. We disagree.

Impracticability and frustration of purpose are closely related, in that they "both have developed from the commercial necessity of excusing performance in cases of extreme hardship." (*Lloyd v. Murphy* (1944) 25 Cal.2d 48, 53; see generally, 30 Williston on Contracts, *supra*, § 77:1.) The doctrines differ in the nature of the hardship. Where impracticability requires that a party be unable to perform without " 'extreme and unreasonable difficulty, expense, injury, or loss' " (*SVAP III Poway Crossings, LLC v. Fitness Internat., LLC* (2023) 87 Cal.App.5th 882, 893, quoting *Autry v. Republic Productions, Inc.* (1947) 30 Cal.2d 144, 149), frustration of purpose applies where " '[p]erformance remains entirely possible, but the whole value of the performance

---

[6] Fitness refers to this doctrine under the labels of impossibility and impracticability. We use the latter term, which is more modern and reflects a move away from requiring strict impossibility. (See 30 Williston on Contracts (4th ed. 2024) § 77:1.)

10

to one of the parties at least, and the basic reason recognized as such by *both* parties, for entering into the contract has been destroyed by a supervening and unforeseen event.' " (*Dorn v. Goetz* (1948) 85 Cal.App.2d 407, 410.)

We have serious doubts as to whether either doctrine could apply in the circumstances of this case.  Courts have generally refused to apply impracticability merely on the basis of a party's financial difficulties.  (See, e.g., *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 839 ["economic crises do not excuse performance on a contract"]; *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 154 ["Facts which may make performance more difficult or costly than contemplated when the agreement was executed do not constitute impossibility"].)  Furthermore, Fitness admits it paid the rent throughout the closure period.  We are not aware of any case in which a court applied impracticability to excuse a party from performing a duty it actually performed.  As to frustration of purpose, at least two courts have held that there is no temporary version of the doctrine.  If frustration of purpose applies, "the 'legal effect . . . is the immediate termination of the contract.' [Citations.]"  (*SVAP III Poway Crossings*, *supra*, 87 Cal.App.5th at p. 896; accord, *20th Century Lites, Inc. v. Goodman* (1944) 64 Cal.App.2d Supp. 938, 943.)  Under this interpretation, there would be no basis for excusing Fitness's obligation to pay rent while the closure orders were in effect without terminating the lease, a remedy Fitness does not seek.

We need not decide, however, whether these issues are fatal because there is a more fundamental problem with Fitness's position: when impracticability or frustration of purchase applies, it cancels or delays the obligations of both parties equally.  It does

11

not allow a party to suspend its own obligations under a contract while demanding that the other party continue to perform. As the court explained in *G. W. Andersen Construction Co. v. Mars Sales* (1985) 164 Cal.App.3d 326, if a plaintiff fails to perform its contractual obligations due to temporary impracticability, this "justified failure to perform . . . operates as the nonoccurrence of a condition which would suspend [the] defendants' duty . . . until [the] plaintiff can and does perform." (*Id.* at p. 336, citing Rest.2d Contracts, §§ 267, 237, 225(1).)

Consistent with this principle, in cases where a party obtained relief from monetary obligations on the ground of impracticability or frustration of purpose, that party was not able to benefit from the other party's performance under the contract. In *La Cumbre Golf and Country Club v. Santa Barbara Hotel Co.* (1928) 205 Cal. 422, a hotel company that had arranged to pay a country club monthly payments so that its guests could play golf at the country club was relieved of its obligation when the hotel was destroyed in a fire. With the hotel no longer in business, there were no guests to play golf. In *Federal Leasing Consultants, Inc. v. Mitchell Lipsett Co.* (1978) 85 Cal.App.3d Supp. 44, the court allowed a defendant to rescind a lease of burglar alarm equipment from the plaintiff under the doctrine of commercial frustration because the equipment interfered with secret government radio frequencies. Once again, the defendant was relieved of its obligation to pay but was unable to use the burglar alarm. (See *id.* at p. 47.) Similarly, in *20th Century Lites, Inc. v. Goodman*, *supra*, 64 Cal.App.2d Supp. 938, the defendant, the owner of a drive-in restaurant, was able to rescind a lease of neon signs after wartime regulations forbade the use of illuminated signs at night. The defendant was unable to use the

12

signs and offered to surrender them to the plaintiff. (*Id*. at p. 940.)

Unlike the prevailing parties in all three cases cited above, Fitness does not seek to terminate the lease, but rather to retain the benefits it received from the lease during the closure period without paying rent. Fitness indeed benefitted from the lease during that time despite being unable to open for business. It was able to leave its fixtures in place without moving them to a storage location and reopen for business immediately once the closure orders were rescinded at the location its customers already knew, rather than having to lease, build out, and market a new location. AISBD, meanwhile, was stuck with Fitness occupying the premises. If Fitness obtained the relief it sought in this case, AISBD would have no recourse to recover rent for the closure period despite Fitness receiving benefits from remaining in possession of the premises during that period.

Two published cases involving nearly identical circumstances have considered arguments similar to those Fitness raises now on impracticability and frustration of purpose, and both have rejected those arguments. (See *KB Salt Lake III, LLC v. Fitness Internat., LLC* (2023) 95 Cal.App.5th 1032, 1057; accord, *SVAP III Poway Crossings, LLC v. Fitness Internat., LLC*, *supra*, 87 Cal.App.5th at p. 896.) We see no basis for reaching a different conclusion.

## DISPOSITION

The trial court's order is affirmed.  AISBD is awarded its costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

14