[No. B153197. Second Dist., Div. Seven. Feb. 19, 2003.]

HAMIDA MADHANI, Plaintiff and Appellant, v.
GLENN COOPER et al., Defendants and Respondents.

## COUNSEL

Charles O. Agege for Plaintiff and Appellant

King & Kennick and E. Susie Wendorff for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—Plaintiff Hamida Madhani was a tenant in an apartment building owned by defendants Glenn and Sheryl Cooper. As Madhani entered her apartment one night she was attacked by another tenant who came up from behind her, grabbed her by the hair, pulled her outside and threw her down several flights of stairs causing Madhani to lose consciousness and sustain serious physical injuries. This same tenant had assaulted Madhani and her mother on previous occasions and Madhani had made numerous complaints to the building managers, who took no action. Madhani sued the Coopers for negligently failing to protect her from the tenant's assault. Observing that "[u]nfortunately, disputes between tenants are not uncommon," the trial court granted the Coopers' motion for summary judgment and entered a judgment in their favor. We reverse.

### FACTS AND PROCEEDINGS BELOW

The following facts are undisputed.

Madhani and her mother, Dishad Bana, resided in an apartment owned by the Coopers (the landlords) for approximately seven years prior to the incidents involved in this suit. In March or April 1998, Yvonne Moore moved into the apartment across from Madhani and her mother.

The first violent episode involving Moore occurred shortly after she moved into the building. In April 1998 Madhani and her mother, Ms. Bana,

were cleaning their apartment when Moore knocked on the door. Ms. Bana opened the door and Moore started yelling at her: "Where is that noise coming from?" Moore "pushed [Ms. Bana] aside and entered the apartment yelling and using profanity. Madhani told Moore to leave. After some additional yelling, Moore walked out.

After Moore left, Madhani reported this occurrence to the building managers, Valerie and Carlos Ray. Valerie Ray told Madhani she had had complaints about Moore from other tenants and that she and her husband would "talk to her, and we'll take care of it."

During the next two days every time Moore saw Madhani she started yelling at her. When Madhani tried to walk down the stairs from her apartment Moore would block her way with her body and refuse to move.

At this point, Madhani called the police and reported the incident in which Moore shoved her mother and yelled at them and the incidents in which Moore blocked the stairs, yelled at her and refused to move. The police officer who took Madhani's report advised her: "[Y]our best bet is to talk to your landlord [because] they can resolve it in a better way . . . than we can." Following this advice, Madhani again contacted the building managers, who once more promised to take care of the situation.

Madhani testified the next day, as she was coming down the stairs from her apartment, Moore "intentionally came towards me and bumped into me." Moore's shoulder bumped Madhani's shoulder. "Stay away from me," Moore yelled at Madhani in a threatening manner.

Once again Madhani complained to Valerie Ray, who told her: "We're working on this."

Other incidents followed in which Moore bumped into Madhani on the stairs and said "bad things" to her. On at least six occasions Madhani complained to the building managers about Moore's behavior but, as far as she knows, nothing was done.[1]

At approximately 10:00 p.m. on the night of October 30, 1998, Madhani returned home from shopping. The light in the hallway outside her apartment was not on and the area was dark. As she reached into her purse for her keys

---

[1]In their motion for summary judgment the landlords do not contend they or their managers took any action with regard to Madhani's complaints about Moore's conduct.

she heard Moore behind her. Moore began yelling at Madhani saying, "I told you, you are safe as long as you are inside. Don't let me ever catch you outside the apartment[.]" Moore stood directly behind Madhani, almost touching her, yelling "at the top of her voice" and "saying the worst things that you could possibly imagine." Madhani finally managed to unlock her door. She turned around and told Moore "Leave me alone." Then she walked into her apartment.

Moore followed her in. Without saying anything further, Moore grabbed Madhani by the hair and pulled her out of the apartment. Madhani testified: "[A]fter she pulled me out, she started hitting me and she pulled me down—threw me down the stairs. And I believe I lost consciousness at that moment."

As a result of this attack, Madhani suffered injuries to her neck, hip and lower back as well as facial bruises.

Madhani brought this action against the landlords for negligence in failing to protect her from the foreseeable assault by Moore. The trial court granted summary judgment to the landlords. Following entry of judgment, Madhani filed a timely notice of appeal.

## DISCUSSION

I.   *The Landlords Owed a Duty of Care to Protect Madhani from Foreseeable Future Assaults by Moore.*

As in most cases dealing with a landlord's liability for criminal acts by third persons, the key issue here is foreseeability of harm.[2]

It is difficult to imagine a case in which the foreseeability of harm could be more clear. We are not dealing here with an isolated incident or extraordinary behavior on the part of Moore.[3] Through their agents, the building managers, the landlords knew or should have known Moore had engaged in repeated acts of assault and battery against Madhani as well as her mother. If

---

[2]See, e.g., *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1189 [91 Cal.Rptr.2d 35, 989 P.2d 121]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676 [25 Cal.Rptr.2d 137, 863 P.2d 207].

[3]Compare *Davis v. Gomez* (1989) 207 Cal.App.3d 1401, 1404 [255 Cal.Rptr. 743] (mentally disturbed tenant acted strangely but none of her past behavior " 'involved any physical violence or real threat to cause bodily harm . . . .' " to other tenants so the landlord could not have foreseen she would shoot a cotenant who was walking down the corridor).

injury to another " ' "is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct" ' " it is " 'reasonably foreseeable.' "[4] In contrast to the trial court's view, we do not believe a reasonably thoughtful landlord would accept as commonplace the repeated verbal and physical abuse of one tenant by another, but would act to put an end to such occurrences. In this case it was foreseeable Moore's violent outbursts and physical assaults would eventually result in serious injury to Madhani.

There are to be sure other factors besides foreseeability to consider in assessing the landlords' duty of care.[5] Those factors all support finding a duty of care in this case. There is no doubt Madhani suffered injury. There is a close connection between the landlords' failure to react to at least six reports of Moore's violent and threatening behavior and the harm suffered by Madhani. In *Donchin v. Guerrero*[6] we held a landlord who knows a tenant harbors a vicious dog must order the tenant to get rid of the dog or, if that fails, must evict the tenant. Surely a similar rule should apply when it is the tenant herself who has the vicious propensity.[7] Moral blame may be attached to the landlords' conduct because they had actual or constructive knowledge of Moore's abusive conduct[8] or were recklessly indifferent to the danger it posed.[9] The policy of preventing future harm will be furthered because the landlords, if held liable, will no longer ignore incidences of threats and violence among their tenants but will take appropriate action before a tenant is seriously harmed. Finally, liability insurance is available to landlords.

Weighing all the factors, we conclude the landlords in this case had a duty to take reasonable steps to protect Madhani from Moore, a tenant with a known proclivity for making verbal and physical assaults on Madhani.

---

[4]*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 307 [34 Cal.Rptr.2d 498].

[5]*Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].

[6]*Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832 [41 Cal.Rptr.2d 192].

[7]The trial court speculated evicting Moore might not have prevented the attack on Madhani because Moore might "have returned as a non-tenant to attack plaintiff." The trial court overlooked the fact Madhani could, and eventually did, obtain a "stay-away" order so the police would respond if Moore returned to the premises. (See Code Civ. Proc., § 527.6.) Furthermore, as a nontenant Moore would be trespassing if she returned to the premises and the building managers themselves could call the police and have her removed.

[8]At his deposition defendant Glenn Cooper testified he didn't remember the Rays' informing him of the previous incidents involving Moore and Madhani but they may have.

[9]Compare *Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 896 [98 Cal.Rptr.2d 576]; *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270 [80 Cal.Rptr.2d 196].

## II. *Triable Issues of Fact Exist as to Whether the Landlords Breached Their Duty of Care to Madhani.*

The landlords failed to show Madhani cannot establish breach of duty.[10] Their brief on appeal does not even discuss this issue, but relies instead on the claim there was no duty to breach.

In *Donchin v. Guerrero,* involving a tenant who kept a dog with known vicious propensity, we held the threat of eviction or eviction itself was a "lever of control which could have prevented Donchin's injuries."[11] In the present case the evidence shows Madhani made at least six requests to the building managers for help in controlling Moore's behavior. Despite these requests and the managers' promises to "take care of the situation," nothing was done to defuse the matter by warning Moore she would be evicted if she persisted in her assaultive behavior or by actually instituting eviction proceedings.

From this evidence a reasonable jury could find the landlords breached their duty of care to Madhani.

## III. *Assuming There Was a Breach of Duty, Triable Issues of Fact Exist as to Whether the Breach Was a Legal Cause of Madhani's Injuries.*

As the parties moving for summary judgment, the landlords had the burden of showing Madhani would not be able to establish at trial their negligence was a substantial factor in causing her injury.[12] Again, the landlords did not carry their burden.

The landlords argue there was nothing they could have done which would have changed the outcome of this matter. Hiring security guards would have been to no avail because Moore was a tenant and therefore lawfully on the premises.[13] Moore's previous behavior did not constitute sufficient grounds for her eviction, they argue, and counseling Moore or threatening her with eviction might only have increased her hostility toward Madhani.

We believe, however, a reasonable jury could find the landlords' failure to take any action in response to Moore's criminal behavior was a substantial factor in bringing about her October 30 attack on Madhani.

---

[10]Code of Civil Procedure section 437c, subdivision (*o*)(2).

[11]*Donchin v. Guerrero, supra,* 34 Cal.App.4th at page 1847; accord, *Uccello v. Lauden-slayer* (1975) 44 Cal.App.3d 504, 512 [118 Cal.Rptr. 741, 81 A.L.R.3d 628].

[12]Code of Civil Procedure section 437c, subdivision (*o*)(2); *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].

[13]Compare *Rosh v. Cave Imaging Systems, Inc.* (1994) 26 Cal.App.4th 1225, 1236 [32 Cal.Rptr.2d 136] (negligent failure to keep fired employee off premises was substantial factor in facilitating attack on plaintiff).

The jury could find installing a security camera focused on the staircase where most of Moore's aggression took place might have inhibited Moore's belligerency toward Madhani. Furthermore, we concluded in *Donchin v. Guerrero* evicting a tenant with a vicious dog "could have prevented Donchin's injuries."[14] The landlords' argument Moore might become even more hostile if they attempted to reason with her provides all the more reason to evict her from the premises.

In the present case it is up to the jury at trial, not the court on summary judgment, to decide whether it is reasonably probable installing a security camera or removing Moore from the premises or other feasible remedies could have prevented Madhani's injuries.

For the reasons explained above, causation remains a question of fact for the jury.

### DISPOSITION

The judgment is reversed. Appellant is awarded her costs on appeal.

Perluss, P. J., and Woods, J., concurred.

---

[14]*Donchin v. Guerrero, supra*, 34 Cal.App.4th at page 1847.