# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 89

### APRIL TERM, A.D. 2019

### September 3, 2019

LARRY WARWICK and GREGORY
GILBERT,

Appellants
(Plaintiffs),

v.                                                    S-18-0219

ACCESSIBLE SPACE, INC.,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
The Honorable Steven K. Sharpe, Judge

*Representing Appellants:*
Douglas W. Bailey and Henry F. Bailey, Jr. of Bailey, Stock, Harmon, Cottam, Lopez, LLP, Cheyenne, Wyoming.  Argument by Mr. Douglas W. Bailey.

*Representing Appellee:*
Loyd E. Smith of Murane & Bostwick, LLC, Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Appellants Larry Warwick and Gregory Gilbert (collectively referred to herein as "the plaintiffs") lived in a senior living apartment complex owned and operated by Appellee Accessible Space, Inc. (ASI).  Another tenant, Larry Rosenberg, shot them, and they sued ASI claiming it was negligent for failing to protect them from Mr. Rosenberg. The district court granted summary judgment in favor of ASI, concluding it had no duty to protect the plaintiffs from Mr. Rosenberg's unforeseeable criminal action.  We affirm the summary judgment.

## ISSUES

[¶2]    The dispositive issues in this case are:

1.      Whether the district court erred by concluding ASI did not owe a common law duty to protect the plaintiffs from Mr. Rosenberg's criminal action.

2.      Whether ASI's alleged failure to comply with the requirements of its leases with the plaintiffs, resident handbook, and personnel policies was the proximate cause of their injuries.

## FACTS

[¶3]    ASI owns and operates Heritage Court Apartments (HCA), a housing complex for low-income seniors in Cheyenne, Wyoming.  HCA is an independent living facility and does not provide personal assistance to tenants.  In order to qualify to live at HCA, the residents must meet age and income requirements.  They also must pass a criminal background check. Mr. Rosenberg satisfied these requirements and began residing at HCA in 2007.  Mr. Gilbert and Mr. Warwick moved into HCA later.

[¶4]    ASI had a written lease with each tenant, and the lease incorporated the requirements of a resident handbook.  The resident handbook stated lease termination and eviction may result from noncompliance with the terms of the lease.  The handbook listed potential violations of the lease, including:  "violation of the housing community's smoke-free housing policy"; "interference with the management of the building"; "conduct that disrupts the livability of the building by disturbing the peace, health or safety of other residents"; "assault, harassment, or threat directed at [m]anagement, vendors, or other residents"; "open or visible possession, use or discharge of weapons, including but not limited to firearms, knives, and explosives of any kind"; and "reports of prostitution, gambling or public drunkenness."  The handbook also provided a process for tenants to lodge complaints and grievances with ASI management.

1

[¶5] In October and November of 2015, Mr. Rosenberg filed written complaints with ASI about Mr. Warwick parking his truck, which was leaking oil, in the parking lot, smoking too close to the building, threatening to "kick [Mr. Rosenberg's] ass," and having a "dirty mouth." He also complained about Mr. Gilbert being allowed to host poker games at the facility because, in his view, it violated the lease prohibition on gambling. In July 2016, he again complained that various members of ASI management were allowing Mr. Gilbert's poker games. Mr. Rosenberg also had disagreements with ASI site liaison, Matt Wilson, over other matters, including use of the HCA grill and repair of Mr. Rosenberg's shower.

[¶6] On September 14, 2016, Mr. Gilbert and Mr. Wilson sat outside the entryway of the HCA building smoking and talking. Mr. Rosenberg walked up and shot them both with a .22 caliber rifle. Mr. Rosenberg then entered the building and knocked on Mr. Warwick's door. When Mr. Warwick answered, Mr. Rosenberg shot him with a .22 caliber pistol. Mr. Rosenberg went back outside and, observing Mr. Gilbert was not dead, shot him again. Shortly thereafter, Mr. Rosenberg fatally shot himself. Mr. Wilson died from his gunshot wounds. Miraculously, the plaintiffs survived, although they continue to suffer from their injuries.

[¶7] The plaintiffs filed suit against ASI alleging negligence and seeking compensatory and punitive damages. They asserted ASI, as a landlord, had a duty to exercise reasonable care to protect them from Mr. Rosenberg's criminal action. They also asserted their leases required ASI to take certain actions to protect them. After extensive discovery, ASI moved for summary judgment, claiming it did not owe the plaintiffs a duty to protect them from Mr. Rosenberg's unforeseeable criminal action and, in any event, its alleged negligence was not the proximate cause of the plaintiffs' injuries. The plaintiffs responded, maintaining there were numerous issues of material fact as to what ASI should have done to protect them from Mr. Rosenberg's action and whether ASI had notice Mr. Rosenberg posed a threat to them.

[¶8] After a hearing, the district court granted summary judgment in favor of ASI. The court concluded ASI did not have a duty to protect the plaintiffs from Mr. Rosenberg's criminal action. The plaintiffs filed a timely notice of appeal. More facts will be provided as necessary to the discussion of the issues.

## STANDARD OF REVIEW

[¶9] Summary judgment is authorized under Wyoming Rule of Civil Procedure 56(a) when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This Court reviews the district court's order granting summary judgment *de novo* and may affirm a summary judgment on any legal grounds appearing in the record. *Bear Peak Res., LLC v. Peak Powder River Res., LLC,* 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017); *Int'l Assoc. of Firefighters*

2

*Local Union No. 5058 v. Gillette/Wright/Campbell Cnty, Fire Prot. Jt. Powers Bd.,* 2018 WY 75, ¶ 19, 421 P.3d 1059, 1064 (Wyo. 2018).

> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Sullivan v. Pike and Susan Sullivan Found.,* 2018 WY 19, ¶ 15, 412 P.3d 306, 310 (Wyo. 2018) (quoting *Rogers v. Wright*, 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016)) (other citations omitted).

[¶10] "The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for summary judgment." *Hatton v. Energy Elec. Co.,* 2006 WY 151, ¶ 9, 148 P.3d 8, 13 (Wyo. 2006). When the moving party does not have the ultimate burden of persuasion, it establishes a *prima facie* case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim. *See, e.g., Rammell v. Mountainaire Animal Clinic, P.C.,* 2019 WY 53, ¶¶ 27-28, 442 P.3d 41, 49 (Wyo. 2019) (defendant presented evidence showing plaintiff could not establish the elements of tortious interference with contract); *Mantle v. N. Star Energy & Constr. LLC,* 2019 WY 29, ¶ 116, 437 P.3d 758, 796 (Wyo. 2019) (defendant presented evidence showing plaintiff could not establish transfers were fraudulent).

[¶11] Once the summary judgment movant establishes a *prima facie* case for summary judgment, the burden shifts to the opposing party to present materials demonstrating a genuine dispute as to a material fact for trial. *Hatton,* ¶ 9, 148 P.3d at 12-13. "'The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment[.]'" *Jones v. Schabron,* 2005 WY 65, ¶ 10, 113 P.3d 34, 37 (Wyo. 2005) (quoting *Downen v. Sinclair Oil Corp.* 887 P.2d 515, 519 (Wyo. 1994)). The evidence presented in a summary judgment proceeding must be admissible and competent. *Id.;* Rule 56(c)(2).

## DISCUSSION

[¶12] The plaintiffs claim ASI was negligent for failing to protect them from Mr. Rosenberg's criminal action. In general, to establish a negligence claim, the plaintiff must show: 1) the defendant owed the plaintiff a duty to conform to a specific standard of care; 2) the defendant breached the duty by failing to act in accordance with the standard of care;

3

3) the defendant's breach of the duty of care proximately caused the plaintiff's injury; and 4) the plaintiff's injury is compensable by monetary damages. *Berry v. Tessman,* 2007 WY 175, ¶ 6, 170 P.3d 1243, 1245 (Wyo. 2007); *Hatton,* ¶ 10, 148 P.3d at 13. Because of the fact-specific nature of negligence claims, summary judgment generally is not favored in such actions. *Lucero v. Holbrook,* 2012 WY 152, ¶ 6, 288 P.3d 1228, 1231 (Wyo. 2012); *Uinta County v. Pennington,* 2012 WY 129, ¶ 11, 286 P.3d 138, 142 (Wyo. 2012) (citing *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 12, 126 P.3d 886, 889 (Wyo. 2006)). However, "'[t]he existence of duty is a question of law, making an absence of duty the surest route to summary judgment in negligence actions.'"[1] *Erpelding v. Lisek,* 2003 WY 80, ¶ 13, 71 P.3d 754, 757 (Wyo. 2003) (quoting *Daily v. Bone,* 906 P.2d 1039, 1043 (Wyo. 1995)). *See also*, *Lucero,* ¶ 6, 288 P.3d at 1231.

[¶13]  The law recognizes a duty when,

> "upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant."

*Hendricks v. Hurley,* 2008 WY 57, ¶ 17, 184 P.3d 680, 684 (Wyo. 2008) (quoting *Goodrich v. Seamands,* 870 P.2d 1061, 1064 (Wyo. 1994)). A legal duty may arise from a contract, a statute or the common law. *Sorensen v. State Farm Auto. Ins. Co.,* 2010 WY 101, ¶ 11, 234 P.3d 1233, 1236 (Wyo. 2010). The plaintiffs do not claim any statute imposed a duty upon ASI to protect them from Mr. Rosenberg's action. They assert, instead, such duty arose from the common law and by contract through their leases, the resident handbook, and ASI's personnel policies.

**Common Law Duty**

**1.**     **Wyoming Case Law**

[¶14]  Property owners "'must use ordinary care to keep the premises in a safe condition and [are] charged with an affirmative duty to protect visitors against dangers known to [them] and dangers discoverable with the exercise of reasonable care.'" *Amos v. Lincoln Cnty. Sch. Dist. No. 2,* 2015 WY 115, ¶ 20, 359 P.3d 954, 960 (Wyo. 2015) (quoting

---

[1] There are rare instances when the jury needs to resolve issues of basic fact before the duty question can be answered. In those cases, the court will ask the jury to decide discrete factual issues. *See Halpern v. Wheeldon,* 890 P.2d 562, 565-66 (Wyo. 1995) (question of basic fact as to whether injury suffered by the plaintiff resulted from an inherent risk of the recreational activity); *Selby v. Conquistador Apartments, Ltd.,* 990 P.2d 491, 494-95 (Wyo. 1999) (question of basic fact regarding whether an accumulation of ice was natural).

*Hendricks*, ¶ 12, 184 P.3d at 683). We applied this general rule in *Krier v. Safeway Stores 46, Inc.,* 943 P.2d 405 (Wyo. 1997), to determine a landlord's responsibility to protect a tenant's employee from criminal action. Daryl Krier was an employee of a Safeway store located in a building owned by Maurice Brown. *Id. at* 407-08. Mr. Krier arrived to work early one morning and encountered a burglar who had entered the store through a skylight he accessed by climbing an antenna fastened to the side of the building. *Id.* The burglar murdered Mr. Krier, and his estate and members of his family brought a negligence action against the Safeway store and Mr. Brown. *Id.* at 406-07. The plaintiffs asserted "Brown knew or should have known that the antenna was an 'invitation' to criminal activity and the tragic result to Krier [was] a foreseeable consequence of its presence." *Id.* at 412.

[¶15] In evaluating whether Mr. Brown owed a duty to Mr. Krier, we started with the principle that an unreasonable risk of harm from criminal acts on a property is a dangerous condition. *Krier,* 943 P.2d at 411 (discussing Restatement (Second) of Property, Landlord and Tenant § 17.3 (1977)). A landlord has a duty to take reasonable steps to protect its tenants if it "'knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its [tenants] on its premises are reasonably foreseeable[.]'" *Krier,* 943 P.2d at 414-15 (quoting *McClung v. Delta Square Ltd. P'ship,* 937 S.W.2d 891, 902 (Tenn. 1996)). *See also*, *Johns v. Hous. Auth. for City of Douglas,* 678 S.E.2d 571, 573 (Ga. Ct. App. 2009) ("A landlord's duty to exercise ordinary care to protect a tenant from third-party criminal attacks extends only to foreseeable criminal acts.").

[¶16] We reviewed the circumstances surrounding the store and the antenna to determine whether the burglar's attack was reasonably foreseeable. *Krier*, 943 P.2d at 415-16. We acknowledged "'[a]s a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises.'" *Id.* at 415 (quoting *McClung,* 937 S.W.2d at 902). *See also*, *Connelly v. Family Inns of Am., Inc.,* 540 S.E.2d 38, 41 (N.C. Ct. App. 2000) ("The most probative evidence on the question of whether a criminal act was foreseeable is evidence of prior criminal activity committed."). However, it is not enough for a plaintiff to simply show there has been other criminal activity on or near the premises.

> "Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action. To hold otherwise would impose an undue burden upon [landowners]."

*Krier,* 943 P.2d at 415 (quoting *McClung,* 937 S.W.2d at 902).

[¶17] We concluded Mr. Brown did not have a duty to protect Mr. Krier from the burglar's criminal act because the evidence did not establish it was reasonably foreseeable. *Krier,* 943 P.2d at 415. There was evidence of prior criminal activity on the premises, including five burglaries or robberies of the Safeway store over the preceding twenty-two years. One of the burglaries involved entry through the skylight, but it occurred more than twenty years before Mr. Krier was killed and there is no indication it involved the antenna. *Id.* at 415-16. In fact, there was no evidence Mr. Brown knew or should have known the antenna was ever used for unauthorized access to the store prior to Mr. Krier's death, even though Mr. Krier's killer said he had used it one other time. *Id.* Furthermore, none of the prior crimes resulted in physical harm to anyone on the premises. *Id.*

[¶18] We have also addressed a landowner's duty to protect business invitees from foreseeable criminal violence in the context of tavern keepers and bar patrons. *See, e.g., White v. HA, Inc.,* 782 P.2d 1125 (Wyo. 1989); *Mayflower Rest. Co. v. Griego,* 741 P.2d 1106 (Wyo. 1987); *Fisher v. Robbins,* 319 P.2d 116 (Wyo. 1957). A tavern keeper's duty to protect its patrons arises when there is a "disturbance in the bar . . . sufficient to alert the tavern keeper that there is imminent danger of injury to a third party." *White,* 782 P.2d at 1129 (citing *Fisher,* 319 P.2d at 118). This requires more than a verbal argument. *Mayflower,* 741 P.2d at 1113-14; *Fisher,* 319 P.2d at 120.

> "[W]e do not consider it is a reasonable inference that when people become angry and argue violently with each other that such disagreement portends they will . . . resort to unlawful assaults and batteries. A mere battle of words, no matter how violent, *unaccompanied by action, threat of action or some type of demonstration which gives warning that violence is impending,* usually causes no concern to those present * * *." (Emphasis added.)

*Mayflower,* 741 P.2d at 1113-14 (quoting *Fisher,* 319 P.2d at 120). The lesson from the tavern keeper cases is notice to the landowner of impending <u>physical</u> violence is critical to establish a criminal act is foreseeable.

[¶19] The case at hand differs factually from *Krier* and the tavern keeper cases. *Krier* involved a previously unknown intruder, while ASI knew Mr. Rosenberg. The tavern keeper cases typically involve disturbances in public establishments followed shortly by an injury-causing assault; there was no disturbance at HCA immediately prior to the shooting. Given these factual disparities, we find it helpful to review cases from other jurisdictions with fact patterns more similar to the case at bar to determine the extent of a landlord's common law duty to protect its tenants from criminal acts. These cases confirm the rules stated in *Krier* and the tavern keeper cases but tailor them for attacks by assailants known to the landlord. They reveal there generally must be evidence of prior criminal or

6

violent acts by the assailant or notice of an imminent threat of danger to impose a duty upon a landlord to protect its tenants.

## 2. Case Law From Other Jurisdictions

[¶20] In *Nero v. Kansas State Univ.,* 861 P.2d 768 (Kan. 1993), the victim filed a negligence action against the university after she was sexually assaulted by a fellow dormmate in a co-ed dormitory. *Id.* at 772. The evidence showed the university knew the perpetrator had been charged with rape for an incident that occurred one month earlier in another dormitory, but, nevertheless, permitted him to move into the co-ed dormitory where the victim lived. The Kansas Supreme Court decided this evidence created an issue of fact as to whether the sexual assault was foreseeable. *Id.* at 771-72, 780. Similarly, the Nebraska Supreme Court, in *S.I. v. Cutler,* 523 N.W.2d 242, 243-245 (Neb. 1994), ruled a commercial building owner owed a duty to protect an employee of one of its tenants from an assailant. The attack was foreseeable because the property owner had previously ejected the assailant from the building for "loitering and assaulting patrons of the building" and the assailant was seen standing in the entrance of the building for half an hour before the assault on the employee. *Id.* at 245. In *Giggers v. Memphis Housing Auth.,* 277 S.W.3d 359, 361, 366-67 (Tenn. 2009), the Tennessee Supreme Court found a shooting in a poverty-stricken public housing project was foreseeable because there was generally a high incidence of violent crime in the housing project and the assailant had previously attacked another tenant with a knife.

[¶21] The California courts of appeals have applied similar analyses. In *Madhani v. Cooper,* 106 Cal.App.4th 412, 415-16 (Cal.Ct.App. 2003), the court ruled the owner had a duty to protect the victim/tenant from another tenant because the attack was foreseeable. *Id.* at 415-16. In the months leading up to the attack, the victim and her mother reported to the building manager that the assailant had verbally and physically abused them on several occasions. *Id.* at 414-16. In *Hawkins v. Wilton,* 51 Cal.Rptr.3d 1, 4, 6-7 (Cal. Ct. App. 2006), evidence was presented showing the shooting of a tenant by a fellow tenant was foreseeable because the owner knew the assailant had previously been convicted of manslaughter, was on drugs, and had "pulled a gun" on another tenant several times. Finally, the shooting in *Barber v. Chang,* 60 Cal.Rptr.3d 760, 763-64 (Cal. Ct. App. 2007), was foreseeable to the apartment owner because he was aware the assailant, who was a tenant, had a particular dislike for the victim, previously pointed a gun at the victim's girlfriend and her mother, and bumped into the victim's girlfriend while telling her to bring the victim "over here and I'll take care of him."

[¶22] Where landlords have less information about similar crimes and/or the assailants, courts have refused to impose a duty to protect tenants because the injury-causing action was not foreseeable. In *Miller v. Tabor West Inv. Co., LLC,* 196 P.3d 1049 (Or. Ct. App. 2008), the owner of an apartment building employed Mr. Owen as its property manager. *Id.* at 1050-51. The assailant, Mr. Woods, moved into the apartment complex after being

7

released from the Oregon State Hospital following a lengthy commitment for an assault. *Id.* Mr. Owen knew of Mr. Woods' recent commitment and the reason for the commitment. He also knew Mr. Woods was on medication to "keep him mellow." *Id.* at 1057.

[¶23] Approximately one month after Mr. Woods moved in, Mr. Owen asked him to turn down the volume of his music. Mr. Woods told Mr. Owen to call the police if he did not like it, slammed his apartment door, and turned the music up louder. *Id.* at 1051, 1057. He then began throwing things out of his apartment onto the lawn. *Id.* In response to this outburst, Mr. Owen served Mr. Woods with written notice his lease would be terminated if he did not keep his noise to a reasonable level. *Id.* at 1051. About a week after the notice, Mr. Owen saw Mr. Woods push the victim, Mr. Miller, during an argument, although Mr. Owen later stated the pushing may have been "friendly." *Id.* at 1051, 1057-58. A day later, Mr. Woods assaulted Mr. Miller.[2] *Id.* at 1051.

[¶24] Mr. Miller sued, claiming the property owner was negligent for failing to protect him from, or warn him about, Mr. Woods. *Id.* The trial court granted summary judgment for the property owner, concluding it did not owe a duty to protect Mr. Miller. The Oregon court of appeals considered "whether, on the facts viewed in the light most favorable to plaintiff, no reasonable juror could conclude that [the property owner's] failure to warn [Mr. Miller] about Mr. Woods' history or behavior or to take measures to protect him from Mr. Woods created a foreseeable risk that [Mr. Miller] would be assaulted by Mr. Woods." *Id.* at 1055. The court concluded evidence that the owner (through Mr. Owens) knew Mr. Woods had been committed to the state hospital for assault, was on medication for mental illness, engaged in irrational behavior regarding the music incident, and was generally aggressive toward Mr. Miller was insufficient to establish Mr. Woods' unprovoked attack on Mr. Miller was reasonably foreseeable. *Id.* at 1057.

[¶25] Other states have concluded a landlord does not owe a duty to protect its tenants when there is no evidence of prior violent acts. In *South v. McCarter,* 119 P.3d 1, 3-4, 15 (Kan. 2005), the Kansas Supreme Court ruled a trailer park owner owed no duty to protect a resident who was injured in a fight because the owner had no specific information as to the perpetrator's past violent or criminal conduct or any actual risk posed by him. In *Estate of Faughey v. New 56-79 IG Assoc., L.P.,* 52 N.Y.S.3d 12, 13 (N.Y. Ct. App. 2017), the New York Court of Appeals held an office building owner had no duty to protect a tenant who was killed by a patient of a resident psychiatric practice because there was no evidence of prior violence by the perpetrator or other third parties in the building. In an earlier case, the New York Court of Appeals determined a property owner did not have a duty to protect a tenant from an assault by two other tenants when it had no knowledge of the attackers' prior criminal histories and "no criminal activities involving the[] parties or any third

---

[2] The assault occurred at a nearby convenience store. *Miller*, 196 P.3d at 1051. The court ruled the landlord's duty of reasonable care to protect a tenant from foreseeable risks of attack by another tenant applied on and off the premises. *Id.* at 1055. We offer no opinion on that issue because Mr. Rosenberg shot the plaintiffs on ASI's premises.

parties in the hotel had been previously reported." *Simms v. St. Nicholas Ave. Hotel Co.,* 589 N.Y.S.2d 485, 485 (N.Y. Ct. App. 1992).

[¶26]   The plaintiffs filed a notice under W.R.A.P. 7.04 identifying a Colorado court of appeals case, *Wagner v. Planned Parenthood,* 2019 COA 26, 2019 WL 989316 (Colo. Ct. App. 2019), as additional authority in support of their position that ASI owed a duty to protect them from Mr. Rosenberg's criminal action.  In *Wagner,* several victims of a mass shooting at an abortion clinic in Colorado Springs, Colorado, sued Planned Parenthood for negligently failing to protect them.  *Id.* at *1-3.  The court held a genuine issue of material fact existed as to whether the shooting was foreseeable because the circumstances were fraught with a known danger to all similarly situated abortion clinics and threats had been directed specifically against the Colorado Springs clinic.  Obviously, there are significant factual differences between *Wagner* and this case; however, the discussion of specific threats as making criminal conduct foreseeable is generally consistent with the other cases we considered above.

### 3.      Application to Facts

[¶27]   In accordance with the above authorities, the common law imposed a duty upon ASI to take reasonable steps to protect the plaintiffs if Mr. Rosenberg's criminal action was reasonably foreseeable.   To establish the requisite foreseeability, the plaintiffs were required to show ASI knew or had reason to know, "either from what ha[d] been or should have been observed or from past experience," Mr. Rosenberg posed a danger to them. *Krier,* 943 P.2d at 414-15 (citation omitted).  This generally requires a showing of prior similar instances of criminal or violent conduct, threats of such conduct or other indications of imminent danger.  *Id.*; *Mayflower,* 741 P.2d at 1113-14.  *See also,* 4 Modern Tort Law: Liability and Litigation § 38:15 (2d ed. 2019).  A mere battle of words, unaccompanied by action, threat of action or some demonstration which gives warning violence is impending, is insufficient to make criminal action foreseeable to the property owner. *Mayflower,* 741 P.2d at 1113-14.

[¶28]   ASI presented evidence in support of its motion for summary judgment showing Mr. Rosenberg had no prior history of criminal violence and no one had filed a formal complaint with ASI about him.   As discussed below, the record contains testimony indicating Mr. Wilson, Mr. Gilbert and Mr. Warwick had verbally complained to ASI management about Mr. Rosenberg.  However, ASI's evidence demonstrated it had no knowledge Mr. Rosenberg had committed any prior criminal or violent acts or other indications he posed an imminent danger.

[¶29]   We conclude ASI presented a *prima facie* case for summary judgment by showing a lack of evidence that Mr. Rosenberg's criminal action was foreseeable, which would negate the duty element of the plaintiffs' negligence claim.  Consequently, the burden

9

shifted to the plaintiffs to bring forth material, specific facts through admissible evidence establishing Mr. Rosenberg's action was foreseeable to ASI. *Jones*, ¶ 10, 113 P.3d at 37.

[¶30] The plaintiffs point to the following evidence to establish ASI was aware Mr. Rosenberg was dangerous:

- In October 2015 (nearly a year before the shooting), Mr. Rosenberg complained to ASI regional housing manager, Dale Culver, about Mr. Warwick's non-specific "violations." Mr. Rosenberg said that if nothing was done about his complaint by November 5, 2015, he would be "asking [the ASI] CEO why not."

- In November 2015, Mr. Rosenberg sent a lengthy letter, apparently to the CEO of ASI. He listed certain terms of the lease he believed the plaintiffs were violating and said his complaints had not been sufficiently addressed by Mr. Culver. Mr. Rosenberg reported his concerns about Mr. Warwick as: his vehicle leaked oil in the parking lot, he smoked closer to the building than policy allowed, he once threatened to kick Mr. Rosenberg's ass, and he had a "dirty mouth." Mr. Rosenberg also complained about Mr. Gilbert hosting poker games onsite and inviting non-resident players.

- On July 25, 2016, Mr. Rosenberg filed another complaint with ASI about Mr. Gilbert's poker games. He stated he had complained about the poker games violating ASI's prohibition on gambling to several ASI employees, including Mr. Wilson, but his complaints had gone unremedied. His primary concern seemed to be that nonresidents came to HCA to play poker.

- Michelle Hodges, a former ASI employee who worked at HCA until June or July 2016, testified she witnessed arguments between Mr. Wilson and Mr. Rosenberg "almost every day." She recounted specific arguments over fixing Mr. Rosenberg's shower and, early in the summer of 2016, over the grill. She expressly denied Mr. Rosenberg was physically violent or threatened physical violence during these arguments.[3] Ms. Hodges said she was in the HCA office when Mr. Wilson called Lisa Forbes, the ASI regional housing representative based in Greeley, Colorado who helped manage HCA, to complain about Mr. Rosenberg's behavior. She overheard him say Mr. Rosenberg was "getting out of hand," complains every day about the grill and Mr. Gilbert holding poker games at HCA, and "something needs to be done about it." He wanted Mr.

---

[3] Mr. Gilbert stated Mr. Wilson told him Mr. Rosenberg tried to push or shove him out of the way and take over when he was fixing the shower. The plaintiffs do not direct us to this testimony as evidence that Mr. Rosenberg was violent. Furthermore, Ms. Hodges witnessed the argument over the shower and expressly denied any physical contact occurred. We will not, therefore, consider this testimony as evidence that ASI had notice Mr. Rosenberg was dangerous

Rosenberg "written up" for "being rude and yelling at him." Mr. Wilson also complained to Ms. Forbes about other tenants. Ms. Hodges did not hear Ms. Forbes' response.

- Mr. Culver was generally aware Mr. Rosenberg and the plaintiffs did not get along.

- Mr. Warwick testified he reported to a "good-sized guy" in glasses and a suit from ASI who visited HCA in the summer of 2016 that Mr. Rosenberg was "dangerous" and "something was going to happen."

- Mr. Gilbert testified he told Mr. Wilson he had seen Mr. Rosenberg with a gun case a few days before the shooting. He also stated Mr. Wilson said Mr. Rosenberg and other tenants had firearms in their apartments, although it is not clear when Mr. Wilson said this.[4]

- Mr. Gilbert testified he reported to various ASI employees Mr. Rosenberg was "going to cause some trouble," but he denied telling them he believed Mr. Rosenberg was dangerous.

- A few days before the shooting, Mr. Gilbert observed a verbal confrontation between Mr. Wilson and Mr. Rosenberg about the grill. A day or so later, Mr. Gilbert overheard Mr. Wilson on the phone with an unknown person, saying he was "being threatened" by Mr. Rosenberg and "wanted to know what they would do about it."

- After the shooting, Ms. Forbes told a Cheyenne Police Department detective Mr. Rosenberg frequently called to complain about other tenants, including Mr. Gilbert playing poker in the community room and Mr. Warwick smoking in his room. She also said Mr. Rosenberg "hated" Mr. Wilson because he "was arrogant and did not listen to [Mr.] Rosenberg's complaints."

[¶31] The evidence showed Mr. Rosenberg had a long history of complaining about other tenants and relatively minor conditions at the facility without becoming violent. According to Ms. Hodges, it was not unusual for tenants at HCA to complain. She testified, "[a]ll [the tenants] complained every day about all kinds of things." "[T]hey all had their complaints

---

[4] ASI did not prohibit HCA tenants from having firearms in their apartments. Only "[o]pen or visible possession, use or discharge of weapons, including but not limited to firearms" was prohibited. Given this policy and the lack of any evidence Mr. Rosenberg brandished or threatened anyone with a firearm, the facts that Mr. Gilbert saw Mr. Rosenberg with a gun case and Mr. Wilson saw firearms in his apartment would not put ASI on notice he intended to shoot anyone.

11

about each other, about things that happened in the place, you know. They're old people. They complain." Mr. Gilbert and Mr. Warwick agreed there was a great deal of complaining at HCA. In fact, Mr. Gilbert testified some tenants complained all the time "about everything under the sun." Furthermore, ASI provided a complaint and grievance process and pledged it would not "retaliate in any way because of a complaint or grievance filed" by a tenant. Thus, Mr. Rosenberg's use of the complaint process would not, in the absence of some type of threat or other indication of danger, alert ASI he was dangerous.

[¶32] Of the evidence identified by the plaintiffs, only two items potentially give any indication ASI knew, or should have known, Mr. Rosenberg was dangerous: 1) Mr. Gilbert's testimony he overheard Mr. Wilson on the telephone after the grill incident telling someone he was "being threatened" by Mr. Rosenberg; and 2) Mr. Warwick's testimony he reported to an unidentified ASI person that Mr. Rosenberg was "dangerous." The plaintiffs maintain it is reasonable to infer the conversation Mr. Gilbert overheard was between Mr. Wilson and someone in ASI management and Mr. Warwick made his statement about Mr. Rosenberg being dangerous to Jeremy Sorenson (Dale Culver's replacement as regional housing manager) when he visited HCA in the summer of 2016. We agree and accept those inferences.

[¶33] Our review of the record revealed a third piece of evidence which could potentially have provided notice to ASI that Mr. Rosenberg was dangerous.[5] Mr. Gilbert testified that, immediately after he witnessed Mr. Wilson's and Mr. Rosenberg's argument over the grill, he noticed Mr. Wilson's shirt was "rumpled." Mr. Wilson told him Mr. Rosenberg had grabbed his shirt and "was going to hit" him.[6]

[¶34] Before we consider the substance of the evidence referenced by the plaintiffs, we must address an issue regarding its admissibility. Evidence presented in a summary judgment proceeding must be admissible and competent. *Jones,* ¶ 10, 113 P.3d at 37 (citation omitted). ASI objected to Mr. Gilbert's testimony about Mr. Wilson's statements as being hearsay. *See* Rule 56(c)(2). The district court sustained ASI's objection and did not consider the evidence.

---

[5] Under Rule 56(c)(3), the Court is not obligated to look beyond the specific facts identified by the plaintiffs as creating an issue of fact. Although we could ignore Mr. Gilbert's testimony about the shirt-grabbing incident, we choose to consider it in our evaluation.

[6] There is no indication Mr. Wilson specifically relayed the information about the shirt-grabbing incident to ASI management. However, he was employed by ASI, so there is an issue as to whether his knowledge should be imputed to ASI even if he did not inform others in the company. Determination of that question is highly fact-sensitive, depending upon numerous factors such as the nature of the information and the scope of Mr. Wilson's authority. *See* 3 Fletcher Cycolopedia of the Law of Corporations § 807 (2018); *Roy E. Hays & Co. v. Pierson,* 234 P. 494 (Wyo. 1925). We note some of the cases discussed above indicated the building manager's knowledge was imputed to the owner. *See, e.g.*, *Madhani* and *Miller, supra.* For purposes of this summary judgment analysis, we will assume Mr. Wilson's knowledge of the incident is imputed to ASI.

12

[¶35] The plaintiffs claim the district court erred by excluding Mr. Gilbert's testimony. They assert it either was not hearsay because it was not offered for the truth of the matter asserted (W.R.E. 801(c)) or it was an admission of a party opponent (W.R.E. 801(d)(2)), or it fell within one of the following exceptions to the hearsay rule: present sense impression (W.R.E. 803(1)); then-existing mental, emotional, or physical condition (W.R.E. 803(3)); or statement of recent perception (Rule 804(b)(5)). We could decline to consider the plaintiffs' argument that the evidence is admissible because there is no indication in the record they raised it below. *See Anderson v. Bd. of Cnty. Comm'rs of Teton Cnty.,* 2009 WY 122, ¶ 15, 217 P.3d 401, 405 (Wyo. 2009). However, we conclude the evidence, even if deemed admissible, was insufficient to establish Mr. Rosenberg's criminal action was foreseeable.

[¶36] Viewing the three items of evidence identified above in the light most favorable to the plaintiffs, it was not foreseeable to ASI that Mr. Rosenberg would attempt to kill Mr. Warwick and Mr. Gilbert. Mr. Rosenberg, like many other residents, had a long history of registering complaints with ASI about other tenants and minor problems at HCA. He specifically complained about the plaintiffs. Although he apparently disliked them, there was no evidence Mr. Rosenberg made any threats or was physically violent toward the plaintiffs or any other tenants. Therefore, Mr. Warwick's nonspecific statement to Mr. Sorenson some months before the shootings that Mr. Rosenberg was dangerous, without any corresponding report of violent or criminal behavior, did not establish Mr. Rosenberg's criminal action against the plaintiffs was foreseeable to ASI.

[¶37] The incident where Mr. Rosenberg grabbed Mr. Wilson's shirt and was "going to hit him" and Mr. Wilson's corresponding report to ASI he was "being threatened" by Mr. Rosenberg was the only known instance of any type of physical violence or threat of physical violence by Mr. Rosenberg during his long tenure at HCA. In evaluating whether the incident was sufficient to place ASI on notice that it needed to protect the plaintiffs from Mr. Rosenberg, we consider "the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action." *Krier,* 943 P.2d at 415 (citation omitted).

[¶38] Mr. Rosenberg's threat was directed at an ASI employee, not a tenant. Moreover, even though Mr. Rosenberg grabbed Mr. Wilson's shirt, he did not hit or otherwise injure him, nor did he use a weapon during the altercation. *See Krier,* 943 P.2d at 415-16 (no evidence of injury resulting from prior crimes on the premises). This relatively minor altercation was so different in nature and extent from the shooting it did not portend Mr. Rosenberg's premeditated attempt to murder the plaintiffs.

[¶39] This conclusion is borne out by Mr. Gilbert's testimony. Even though he knew about the shirt-grabbing incident, Mr. Gilbert stated he was not afraid of Mr. Rosenberg prior to the shooting. He, Mr. Warwick and Ms. Hodges were the witnesses who had the

most contact with Mr. Rosenberg, and they all testified they did not believe, at any time before the shooting, Mr. Rosenberg was dangerous.

[¶40]  The plaintiffs maintain the precise harm or victim need not be foreseeable to impose a duty upon ASI to protect them; it merely had to be foreseeable that Mr. Rosenberg would cause some type of injury to someone.  They rely on *Endresen v. Allen,* 574 P.2d 1219 (Wyo. 1978), to support their argument.  Endresen was injured when he hit the Allens' dog with his motorcycle.  *Id.* at 1220-21.  He filed suit, claiming the Allens were negligent for failing to keep their dog contained.  *Id.*  The district court granted summary judgment in favor of the Allens, apparently on the basis they did not owe Mr. Endresen a duty because the accident was not foreseeable.  *Id.*

[¶41]  On appeal, this Court ruled material issues of fact existed as to whether Mr. Endresen's injuries were foreseeable because the Allens' dog had previously escaped from their backyard and chased cars and they had been told by the city dog catcher to keep it tied up.  *Id.* at 1220-22.  We rejected the Allens' argument that the accident was not foreseeable because the dog had previously chased cars, not motorcycles.

> [I]t is generally held, regardless of whether the question of "foreseeability" is treated as a problem of "duty," "negligence," or "proximate cause," that it is not necessary that the defendant might or should have foreseen the likelihood of the particular injury or harm, the extent of the harm, or the manner in which it occurred, but that it is only necessary that he should have anticipated that some injury or harm might result from his conduct.

*Id.* at 1222 (citations omitted).  "It is not a necessary element of negligence that one charged therewith should have been able to anticipate the precise injury sustained" or that the "injury to the plaintiff himself be foreseeable[.]"  It is sufficient to show "the act in question may in human probability produce harm to persons similarly situated."  *Id.* (citation omitted).

[¶42]  *Endresen* did not involve harm resulting from the criminal actions of a third party.  The foreseeability of Mr. Endresen's injury was a function of the recognized risk that the Allens' negligence in failing to contain their dog would result in it chasing vehicles which could, in probability, cause an injury-producing accident.  Mr. Endresen was similarly situated to prior drivers whose vehicles had been chased by the dog.  The Allens' failure to contain their dog placed the traveling public, including Mr. Endresen, at risk of injury from a vehicular accident.  *Id.* at 1222.

[¶43]  The case at bar did not involve a general risk to the public.  The plaintiffs' arguments are based largely on Mr. Rosenberg's negative feelings toward them.  Consequently, the

plaintiffs must establish it was reasonably foreseeable to ASI that Mr. Rosenberg would criminally attack the plaintiffs, or persons similarly situated to them. There is insufficient similarity between Mr. Rosenberg's isolated outburst at one of ASI's employees, which was unaccompanied by blows, weapons or injuries, and his later premeditated shooting of them to impose a duty upon ASI to protect them from his action.

[¶44] Of the caselaw we discussed above, *Miller* has a fact pattern most closely resembling the facts in this case because it, too, involved an assault of one tenant upon another tenant following a series of events observed by the owner's representative. The evidence in *Miller*, which included knowledge of the assailant's criminal and violent past and a prior instance of aggression against the victim, made a stronger showing of foreseeability than the evidence offered by the plaintiffs here. Nevertheless, the Oregon court found it legally insufficient to impose a duty upon the owner to protect the victim from the assailant. *Miller,* 196 P.3d at 1057-58.

[¶45] As related to the *Endresen* holding, the *Miller* court noted: "[T]he concept of foreseeability refers to generalized risks of the type of incidents and injuries that occurred rather than predictability of the actual sequence of events[.]" *Id.* at 1058 (internal quotations omitted). However, in light of the intervening criminal act, specific knowledge of the risk of "the type of harm that befell" the victim was required. *Id.* We reach the same conclusion in this case. On this factual record, ASI did not have notice of an unreasonable risk Mr. Rosenberg would shoot or seriously injure the plaintiffs or other similarly situated persons. Accordingly, it did not have a common law duty to protect them from Mr. Rosenberg's criminal action.

### Contractual Duty and Proximate Cause

[¶46] The plaintiffs assert their leases, the resident handbook and ASI's personnel policies imposed a duty upon ASI to engage in conflict resolution and properly train its employees to do so. They claim ASI's failure to resolve Mr. Rosenberg's complaints created an unsafe environment which led to the shootings.[7]

[¶47] As we stated earlier, a duty for purposes of a negligence claim may arise from a contract. *Sorensen,* ¶ 11, 234 P.3d at 1236. *See also, Brubaker v. Glenrock Lodge Intern. Order of Odd Fellows,* 526 P.2d 52, 59 (Wyo. 1974) ("A contract may create a relationship from which arises the duty to exercise ordinary care."). In its lease, ASI agreed to "deliver and maintain the premises in a safe, sanitary and decent condition." The resident

---

[7] The plaintiffs very briefly mention ASI should have, if it could not remediate Mr. Rosenberg's complaints, taken steps to evict him for interfering with the management of HCA. They make no effort to explain how the eviction process would have worked, when it should have been initiated, or, importantly, whether it would have resulted in Mr. Rosenberg having vacated the premises before the shooting. Thus, they present no factual basis to conclude ASI's failure to commence eviction procedures was a proximate cause of the shootings.

handbook, which was an addendum to the lease, included a "Complaint/Grievance Reporting" procedure. It allowed residents to "communicate complaints, grievances, and/or other concerns to Management" verbally or in writing on a form provided by ASI. With regard to resolution of a complaint, the handbook stated:

> The Regional Housing Manager will attempt to communicate and resolve complaints and grievances directly with the resident . . . to the satisfaction of all parties involved. As needed and/or as appropriate, other ASI Management staff may be consulted during this process. Depending upon the nature of the complaint/grievance and the information gathered, clarified or confirmed, the Regional Housing Manager will determine if a verbal or written response is needed, and respond accordingly. Written responses may include written warnings, lease infractions, and/or Lease Terminations. [ASI] will not retaliate in any way because of a complaint or grievance filed or received by a resident[.] . . . At any time before, during, or after this process, the resident may contact anyone they (sic) choose to file a complaint or to ask for assistance[.]

The handbook also stated the ASI "housing community has an assigned Regional Team of specialized, trained and experienced ASI representatives whom you may contact for assistance, or if you have questions about your housing." We have no difficulty agreeing ASI owed the plaintiffs the duties outlined in the lease and handbook and ASI was required to use reasonable care in fulfilling them. *See, e.g.*, *Alaskan Village, Inc. v. Smalley,* 720 P.2d 945, 947-48 (Alaska 1986) (trailer park had duty to exercise reasonable care in enforcing its rules to protect persons benefitted by the rules).

[¶48] However, the plaintiffs also assert ASI's personnel rules for non-exempt employees created a duty in their favor. Pertinent here, the rules stated: "When disagreements arise between staff, residents/staff, or supervisors/staff, the individuals in disagreement are responsible for resolving the issue through direct negotiation to achieve agreement or acceptance to a common point of view." The plaintiffs seem to argue this provision imposed an absolute duty upon ASI to resolve Mr. Rosenberg's complaints to his satisfaction. Yet, they point to no provision in the lease or handbook showing the personnel rules were incorporated into their contract with ASI. Furthermore, imposing an absolute duty to resolve Mr. Rosenberg's complaints to his satisfaction would be contrary to ASI's obligation from the resident handbook to "attempt" to resolve complaints to the satisfaction of all involved.

[¶49] Accepting ASI had a duty under the terms of the lease and resident handbook to properly address Mr. Rosenberg's complaints, we move on to the other elements of

negligence—whether ASI breached that duty and whether any breach was the proximate cause of the plaintiffs' injuries. The plaintiffs claim ASI was generally negligent for failing to abide by its own policies and procedures to remediate Mr. Rosenberg's complaints and failing to adequately train its employees regarding safety, security and tenant conflict resolution.[8]

[¶50] The record contains evidence that ASI addressed at least some of Mr. Rosenberg's complaints, a point which he acknowledged in his correspondence with ASI. ASI sent letters to Mr. Warwick about his truck leaking oil in the parking lot and smoking too close to the building. The record also contains a letter Mr. Culver sent to Mr. Rosenberg after ASI's concerns were communicated to Mr. Warwick. Mr. Culver stated he had addressed the oil leak issue with "the owner." He continued, "Please be advised that we do not typically announce to other residents that we are monitoring or investigating them, nor do we inform complainants of our actions or activities out of respect for resident privacy."

[¶51] The record demonstrates Mr. Culver and Mr. Sorenson addressed Mr. Rosenberg's complaints about the poker games with him on different occasions. ASI management allowed Mr. Gilbert to host the poker games because, given the type of game being played and the low stakes, it did not consider the games a violation of the law or the ASI lease term prohibiting gambling. Nevertheless, the plaintiffs claim ASI's efforts to appease Mr. Rosenberg were insufficient and their expert agreed.

[¶52] The issue of whether ASI breached its obligation to properly address Mr. Rosenberg's complaints is complex. It would require detailed analysis of the admissibility of the evidence offered by each party and whether that evidence raised any genuine issue of material fact. We do not need to undertake that task because the plaintiffs are unable to establish any such breach was the proximate cause of their injuries.

[¶53] Proximate cause, like common law duty, focuses upon the foreseeability of the injury. *Lucero,* ¶ 17, 288 P.3d at 1234. For proximate cause to exist, "the accident or injury must be the natural and probable consequence of the act of negligence." *Foote v. Simek,* 2006 WY 96, ¶ 22, 139 P.3d 455, 463 (Wyo. 2006) (citation omitted). Stated another way, "the conduct must be a substantial factor in bringing about the plaintiff's injuries." *Id.,* ¶ 22, 139 P.3d at 464. However, "'[i]f the original wrong furnished only the

---

[8] The plaintiffs assert one of the steps ASI should have taken to protect them was to install security cameras because, according to their expert, such cameras are nationally recognized deterrents to crime. The plaintiffs do not point to any lease provision obligating ASI to provide security cameras. Under the common law, if it is foreseeable that tenants may be subject to criminal attack, a landlord's duty to exercise reasonable care to protect its tenants may be breached by the failure to install security measures. *See, e.g.*, *Madhani,* 130 Cal.Rptr.2d at 781-82; *Rodriguez-Quinones v. Jimenez & Ruiz, S.E.,* 402 F.3d 251 (1st Cir. 2005). As explained *supra,* it was not reasonably foreseeable to ASI that the plaintiffs were subject to criminal attack; therefore, it had no obligation to install security devices.

condition or occasion, then it is the remote and not the proximate cause, notwithstanding the fact that there would have been no loss or injury but for such condition or occasion.'" *Lucero,* ¶ 17, 288 P.3d at 1235 (quoting *Lemos v. Madden,* 200 P. 791, 794 (Wyo. 1921)) (other citations and emphasis omitted).

[¶54]  An intervening cause will break the chain of causation.  *Lucero,* ¶ 17, 288 P.3d at 1235.  *See also, Collings v. Lords,* 2009 WY 135, ¶ 6, 218 P.3d 654, 656-57 (Wyo. 2009).

> An intervening cause is one that comes into being after a defendant's negligent act has occurred, and if it is not a foreseeable event it will insulate the defendant from liability. It is reasonably foreseeable if it is a probable consequence of the defendant's wrongful act or is a normal response to the stimulus of the situation created thereby.

*Lucero,* ¶ 17, 288 P.2d at 1235 (internal quotations and emphasis omitted).  *See also, Killian v. Caza Drilling, Inc*., 2006 WY 42, ¶ 20, 131 P.3d 975, 985 (Wyo. 2006).

[¶55]  We applied these principles in *Lucero.*  Nanette Holbrook started her car and left it running in the driveway with the doors unlocked while she briefly went back inside her house.  *Lucero,* ¶¶ 1, 3 288 P.3d at 1231.  While she was gone, Colbey Emms, who was under the influence of methamphetamine, stole the car.  *Id.,* ¶ 1, 288 P.3d at 1231.  Ms. Holbrook called 911 to report the stolen car.  *Id.,* ¶ 3, 288 P.3d at 1231.  The police pursued Mr. Emms at high speed, and he crashed into Katrina Lucero's car, seriously injuring her and her two children.  *Id.*, ¶¶ 1, 4, 288 P.3d at 1231.

[¶56]  Ms. Lucero filed suit against Ms. Holbrook, claiming she was negligent for leaving her car unattended with the keys in the ignition.  *Id.*  The district court granted summary judgment in favor of Ms. Holbrook, reasoning she did not owe a duty to Ms. Lucero and her action was not the proximate cause of Ms. Lucero's injuries.  *Id.*  This Court agreed with the district court's reasoning.  *Id.*  With regard to proximate cause, we conceded that "but for" Ms. Holbrook's action, the accident would not have happened.  *Id.,* ¶ 17, 288 P.3d at 1234.  However, it was a remote, rather than a substantial, cause of Ms. Lucero's injuries.  *See id.,* ¶ 17, 288 P.3d at 1234-35.  There were several intervening causes which came into being after Ms. Holbrook's alleged negligence, including Mr. Emms' theft of the car, his attempt to elude the police at a high rate of speed, the police officers' high-speed pursuit, and Ms. Lucero's action in entering the intersection against a red light.  *Id.,* ¶¶ 16-17, 288 P.3d at 1235-35.  The intervening causes were not foreseeable consequences of Ms. Holbrook's action.  *Id.* at ¶¶ 16-18, 288 P.3d at 1234-35.  *See also*, *Killian,* ¶ 20, 131 P.3d at 985 (intervening cause must be foreseeable to establish proximate cause).

[¶57]  Applying our general rules of proximate cause, it was not foreseeable Mr. Rosenberg would shoot the plaintiffs because his complaints were not adequately

addressed by ASI. His violent response was not a probable consequence of, or normal response to, ASI's alleged failure to address his objectively minor concerns. The causal chain is even more tenuous because the record indicates Mr. Rosenberg's most recent complaint to ASI management about Mr. Gilbert was in July (two months prior to the shooting) and his most recent complaint about Mr. Warwick was in the winter of 2015.

[¶58] In a somewhat confusing argument, the plaintiffs assert there are genuine disputes of fact as to whether Mr. Rosenberg's criminal action was foreseeable because an industry standard requires apartment complex owners to address "complaint issues" quickly and fairly to prevent behavior problems which can lead to "very serious criminal activity." This Court has indicated that, under appropriate circumstances, violation of an industry standard may be considered in determining whether a landowner breached its duty to use reasonable care to maintain the property in a safe condition. *Williams v. Plains Tire & Battery, Co., Inc.,* 2017 WY 136, ¶¶ 27-30, 405 P.3d 228, 235 (Wyo. 2017); *Landseidel v. Buffalo Properties, LLC,* 2005 WY 61, ¶¶ 22-25, 112 P.3d 610, 617 (Wyo. 2005); *Frost v. Allred,* 2006 WY 155, ¶¶ 3, 8-17, 148 P.3d 17, 18-21 (Wyo. 2006). In other words, the industry standard would establish the standard of conduct for a reasonable person. *Id.* The plaintiffs provide no legal authority explaining how an industry standard could make a criminal act foreseeable.

[¶59] Furthermore, the determination of whether an industry standard applies in a given case is complex. One of the considerations is whether the industry standard has been incorporated into legislative enactments or administrative regulations. *Landseidel,* ¶¶ 24-25, 112 P.3d at 617; *Williams,* ¶ 30, n.10, 405 P.3d at 235, n.10; *Frost,* ¶¶ 3, 8-17, 148 P.3d at 18-21. The plaintiffs do not direct us to any evidence showing the State of Wyoming, the City of Cheyenne, or any other governing authority adopted the standard they posit. Nor, do they explain how the standard would apply in the absence of such adoption. We, therefore, decline to apply the purported industry standard to establish proximate cause in this case.

## CONCLUSION

[¶60] The plaintiffs suffered serious injuries as a result of Mr. Rosenberg's horrific criminal action. However, his prior conduct did not give ASI reason to know he posed a danger to them. Consequently, it did not have a common law duty to protect the plaintiffs from Mr. Rosenberg's criminal action. ASI was obligated to fulfill the obligations regarding tenant complaints set out in its lease and the resident handbook. However, even if we assume ASI failed to sufficiently address Mr. Rosenberg's minor complaints, its actions were not the proximate cause of the plaintiffs' injuries.

[¶61] Affirmed.